Harney v. The State.

8L 113
11L 204
13L 230

## JOE HARNEY v. THE STATE.

CRIMINAL LAW. *Selling liquor within four miles of incorporated institutions of learning. Buyer not guilty.* Under the act of 1877, ch. 23, which makes it a misdemeanor, subject to both fine and imprisonment, to sell or tipple any intoxicating beverage within four miles of an incorporated institution of learning, the buyer of the liquor is not guilty of the offense.

### FROM DAVIDSON.

Appeal in error from the Criminal Court of Davidson county. J. M. QUARLES, J.

JOHN D. BRIEN for Harney.

ATTORNEY-GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

The plaintiff in error was presented for that he "did sell and tipple an intoxicating beverage within

8—VOL. 8.

four miles of an incorporated institution of learning." The only witness examined on the trial testified that the plaintiff in error bought of the witness a drink of whisky within four miles of the Vanderbilt University, admitted to be an incorporated institution of learning. The trial judge charged the jury that if they found that the plaintiff in error had bought a drink of whisky within four miles of the university, he would be guilty as charged in the presentment. The jury found him guilty, and he has appealed in error from the judgment rendered on the verdict.

The act of 1877, ch. 23, under which the presentment was found, provides that it shall not be lawful for any person to sell or tipple any intoxicating beverage within four miles of an incorporated institution of learning in this State, and that any person violating the act shall be guilty of a misdemeanor. A tippling house is a place where spirituous liquors are sold and drank in violation of law: Bouv. Law Dic. *Sub voce.* Or, as defined by this court under our statutes, a place where spirituous liquors are sold, without license, in less quantities than a quart, or in any quantity to be drank at the place: *Dunnaway* v. *State,* 9 Yer., 350; *Sanderlin* v. *State,* 2 Hum., 315. The word tipple in the act of 1877 means to sell to be drank at the place of sale. The question is, therefore, squarely presented whether, as the trial judge charged, the person who buys liquor sold contrary to the provisions of the act is equally as guilty as the seller, and punishable under an indictment which charges him as the seller.

The general rule undoubtedly is, that in misde-
meanors all who are in any manner concerned, if
guilty at all, are principals, and may be proceeded
against accordingly: *Curlin* v. *The State*, 4 Yer., 143.
And, under a statute which forbade the sale of liquor
by a slave, this court sustained an indictment against
a white man for buying liquor from a slave, which
charged him with aiding, abetting and encouraging the
sale: *State* v. *Bonner*, 2 Head, 135.    The learned
judge who delivers the opinion says that, upon gen-
eral principles, the purchaser of spirituous liquor, in
violation of the statutes passed to suppress tippling, is
as much guilty of a violation of the law, and as much
amenable to criminal prosecution and punishment, as
the seller.    And there can be no doubt, upon the
strict principles of the law carried out to their logical
result, that the statement is warranted.    But it is
easy to see that, in the particular case before the
court, the condition of the vendor as a slave might
well induce the court to consider the penalty of the
act as directed against the white man who en-
ticed him to sell.    And the practice has never pre-
vailed in this State, under the ordinary statutes against
tippling, to extend the punishment to the purchaser.
"No such prosecution," to borrow the language of
Chief Justice Shaw upon the same question in Massa-
chusetts, "has been attempted within the knowledge
of the court, although a similar law has been in force
almost from the foundation of the government, and
thousands of prosecutions and convictions of sellers
have been had under it, most of which have been

sustained by the testimony of the buyers." The chief justice admitted that it was difficult to draw any precise line of distinction between the cases in which the law holds it a misdemeanor to counsel, entice or induce another to commit a crime, and where it does. not. But he thought that the principle might be limited to offenses which are *mala in se,* in contradistinction to *mala prohibita,* or acts otherwise indifferent than as they are restrained by positive law. And the court held that the buyer was not indictable under a statute which prohibited the sale of liquors: *Commonwealth* v. *Willard,* 22 Pick., 476.

Mr. Bishop, while conceding the general principle to be as laid down in *The State* v. *Bonner,* finds that it is not rigidly applied to the lighter misdemeanors, because of the smaller degree of blame involved in the offense, or the special terms of the statute creating it. "If," he says, "the terms of a statute distinctly limit the penalty to persons who participate in the act only in a certain way, those terms furnish the rule of the court. Or, if the expression is general, but the offense is of minor turpitude, and especially if it be only *malum prohibitum,* the courts, by construction, will limit its operation to those persons who are more particularly within the reason or the express words of the enactment": 1 Bish. Crim. Law, sec. 657. The same idea is a little differently expressed by Smith, J., in delivering the opinion of the Supreme Court of New Hampshire upon the question now being considered: "In cases of *mala prohibita,* the fact that the penalty is in terms imposed upon only one of

Harney v. The State.

two parties whose concurrence is requisite to the commission of the offense, and that the statute was made for the protection of the other party, who is generally regarded as the less culpable of the two, has repeatedly been considered good ground for giving the statute a construction exempting the party not named from criminal liability": *The State* v. *Rand*, 51 N. H., 361.

One main object of the statute under consideration was to prevent the sale of liquor to the young students at the educational institutions of the State. Laws having the same object in view have long been on our statute books: Code, secs. 4862–3. The Legislature could scarcely have intended that these young boys, who might be thoughtlessly led into temptation, should be visited with the heavy punishment of the statute under consideration,—a fine of not less than $100 and imprisonment of not less than one month. They were intended to be protected, not punished by the statute. If, moreover, the buyer is equally guilty with the seller, he cannot be compelled to testify to a violation of the law, and almost the only means of punishing the offense at all will be cut off.

For these reasons, we think his Honor erred in his charge, and reverse the judgment.

TURNEY, J., delivered the following dissenting opinion, in which McFARLAND, J., concurred:

Section 1 of the act of the General Assembly, passed March 19, 1818, entitled "An act to prohibit the sale of intoxicating liquors near institutions of learning," enacts that "it shall not be lawful for any person to sell or tipple any intoxicating beverage within four miles of an incorporated institution of learning," &c.

Harney was presented and convicted for *selling and tippling* within four miles, &c. The proof is that he bought a drink of whisky from M. Singleton.

The court charged that "if the defendant bought the drink of whisky outside of an incorporated town and within four miles of the Vanderbilt University, an incorporated institution of learning, then and in that event he would be guilty as charged, as there are no accessaries in misdemeanors, but all are guilty who have any guilty participation in the crime charged."

A sale is an agreement by which *one of the contracting parties* gives a thing and passes the title to it, in exchange for a certain price in current money, to the other party, who on his part agrees to pay such price: 2 Kent, 363.

To constitute a valid sale there must be—1. Proper *parties;* 2. A thing which is the object of the contract; 3. A price agreed upon; and 4. *The consent of the contracting parties and the performance of certain acts required to complete the contract:* Bouvier's Law Dictionary.

By the terms of the foregoing definition, a buyer is as necessary to a sale as the seller. It is the buying and selling combined that constitutes the sale.

Bouvier defines a tippling house to be "a place where spirituous liquors are sold and drank in violation of law." From this it seems that both a sale and a drinking are necessary to constitute the act of tippling. Certainly the seller cannot tipple by himself; he must have a purchaser, and that purchaser is of course a party to the tippling. It requires the concurring wills and acts of the two to constitute the offense.

Webster defines tipple, "to drink, as strong liquors, in luxury or excess." If this be the true definition, it would seem that the drinker is alone the tippler.

We think, however, that the true rule is, that both seller and buyer are necessary to the offense, and that the term tipple, in a legal sense, means a sale and consumption.

The latter part of the charge is well supported. In *Conlin* v. *The State*, 4 Yer., 143, the court says: "In all the lesser offenses, all persons who are in any manner concerned therein, if guilty at all, are principals and equally guilty"—citing 1 Chitty's Crim. Law, 261.

In *Harper* v. *The State*, 3 Lea, 211, this court said: "If a prescription be a subterfuge to evade the law, the druggist, physician and buyer are liable to indictment or presentment." See, also, *Newman* v. *State*, 7 Lea.

In *State* v. *Bonner*, 2 Head, 136, Judge McKinney

says: "We suppose it cannot be seriously controverted that, upon general principles, the purchaser of spirituous liquors in violation of the statute passed to suppress tippling, is as much guilty of a violation of the law, and as much amenable to criminal prosecution and punishment, as the seller. They are in all respects *particeps criminis;* they are alike willful violaters of the law. The express prohibition to sell, upon every just principle of construction, must be considered as implying a prohibition to purchase. The purchaser, whether we regard his intent or the effect and consequences of his act, is no less guilty, no less within the mischief intended to be suppressed, than the seller. It matters not that the former is placed under the obligation of a bond or oath. This takes nothing from the force of the argument. He still stands guilty of wilfully participating in and aiding and encouraging the commission of a criminal offense. Does not this, upon the soundest principles of criminal law, constitute him a principal in the offense? We think it does. And perhaps it would be scarcely going too far to say, that he ought to be regarded as less excusable than the seller. He has not the poor pretext of the latter, that the forbidden traffic is, in part, his means of procuring a living."

This decision was made in 1858, and has been the recognized law ever since, and we can see no good reason for overruling it after a lapse of nearly a quarter of a century. The presentment is sustained by both the letter and spirit of the statute, and strikes at the evil intended to be remedied.