State v. Meagher.

STATE OF MISSOURI, Respondent, v. MEAGHER, Appellant.

St. Louis Court of Appeals, October 17, 1905.

Opinion by Bland, P. J.

1. SUNDAY LAW: "Tippling Shop": Saloon. One who kept open a saloon on Sunday for the purpose of permitting persons to enter and drink therein, although he was not shown to have a dramshop license, was guilty of keeping open a "tippling shop" within the prohibition of section 2243, Revised Statutes of 1899.

2. ———: ———: Evidence. In the prosecution of a saloon keeper, who was not shown to have a dramshop license, for the violation of section 2243, Revised Statutes of 1899, the evidence showed that the witnesses entered by the back door which was opened to admit them; that they went in to see the proprietor on business, and not to get a drink; that the proprietor was behind the bar with an apron on; that several men were in the saloon; that one witness drank whiskey and another drank soda furnished by the proprietor, but there was no evidence to show that any drinks were sold. Held, the evidence was insufficient to sustain a conviction for a violation of said statute.

Dissenting Opinion by Goode, J.

3. ———: ———: ———. In the prosecution of the proprietor of a saloon for violation of section 2243, Revised Statutes of 1899, who was not shown to have a dramshop license, where the evidence of the witness showed that he was admitted into the saloon by the back door by some one from the inside; that the proprietor was behind the bar with an apron on; that there were four or five persons in the saloon; that drinks were fur-

nished to the witness and another, though no money was shown to have been paid. *Held,* the facts were sufficient to justify a conviction for violation of said statute.

Appeal from Barry Circuit Court.—*Hon. Henry C. Pepper,* Judge.

REVERSED.

*Davis & Steele* for appellant.

(1) The court should have sustained defendant's demurrer to the testimony. Admitting everything that the State proved there is absolutely no crime shown to have been committed under the charge and the law. There is bound to be a marked and well-defined difference between a tippling-shop and a dramshop. It is admitted in this case that the place in question was nothing more nor less than a dramshop belonging to J. V. Meagher, and the defendant, Billy Meagher, was the regular bartender for several years. All the witnesses testified and the questions by the prosecuting attorney assumed that the place in question was a saloon. No sale was made, neither was there a purchase made and, so far as the testimony discloses, only one drink of intoxicating liquor was ever drunk in that place, nor does it show a single sale was ever made there. The following authorities hold that it takes more than one sale to constitute a tippling-house: Woods v. Com., 1 B. Mon. (Ky.) 75; Hinton v. Com., 7 Dana (Ky.) 216; Dunaway v. State, 9 Yerg. (Tenn.) 350. It is also an element of the offense of running a tippling-shop that it must be run without a license. Emporia v. Volmer, 12 Kan. 622; Com. v. Campbell, 5 Bush (Ky.) 311; Com. v. Riley, 14 Bush (Ky.) 44; Webster v. Com., 7 Dana (Ky.) 215; Our v. Com., 9 Dana (Ky.) 30; Com. v. Allen, 15 B. Mon. (Ky.) 1; Com. v. Harvey, 16 B. Mon. (Ky.) 2; Com. v. Baird, 4 S. & R. (Pa.) 141; Dunaway v. State, 9 Yerg. (Tenn.) 350. (2) Instruction numbered three

should not have been given.   There was no testimony to base it on. In the first place, it assumed that the place in question was a tippling-shop—which was controverted. Whether it was a tippling-shop in fact should have been left for the jury to find from the evidence, and should not have been assumed by the instruction.  The instruction designated the place as "the tippling-shop" without leaving it to the jury to determine from the evidence that it was of that character.  This was error.  State v. Dillihunty, 18 Mo. 331; Orscheln v. Scott, 79 Mo. App. 541;  Shoe Co. v. Hilig, 70 Mo. App. 310;  Plummer v. City of Milan, 70 Mo. App. 598.

   *D. H. Kemp* for respondent.

   There is no question as to the occurrence being on Sunday.  The evidence clearly proves that the place mentioned and where witnesses Burgess and O'Dwyer drank, was a saloon or dramshop.  While the evidence by which such proof was made may not have been the best evidence, and upon objection would not have been admitted by the court, yet when no objection is made and the evidence shows the place was a saloon, a dramshop, and both parties treat the evidence as proving such fact, it surely would not be necessary to make formal proof of the issue of a license to keep a dramshop in order to establish the character of the place.  In the case of State v. Ambs, 20 Mo. 215, the court sustained a conviction of a dramshop-keeper for keeping open an alehouse under the same law on which the prosecution of this case is based.  This case has not been overruled.  In the case of State v. Crabtree, 27 Mo. 232; State v. Heckler, 81 Mo. 417, and State v. Kurtz, 64 Mo. App. 123, the doctrine is recognized that a dramshop-keeper is amenable to the law under consideration.

   BLAND, P. J.—1. The appellant was convicted and fined twenty-five dollars, in the Barry Circuit Court, on

an information bottomed on section 2243, Revised Statutes 1899, charging that he kept "open a certain alehouse and tippling-shop by permitting persons to enter said alehouse and tippling-shop, and then and there drink intoxicating liquors," on the first day of the week commonly called Sunday. The witnesses for the State designated the house mentioned in the information as a saloon, but there was no evidence that the keeper of the house had a dramshop license. On this scrap of evidence, appellant contends that his peremptory instruction to find for the defendant, offered at the close of the State's evidence, should have been given for the reason that a saloon is not a tippling-house, within the meaning of the section upon which the indictment is predicated.

In Dunnaway v. State, 17 Tenn. 350, and Harney v. State, 76 Tenn. 113, it was held, under a statute prohibiting the sale of intoxicating liquors in less quantities than a quart without a license, that a tippling-house is a place in which intoxicating liquors are sold in less quantities than a quart without a license.

Bouvier defines a tippling-house as a "place where spiritous liquors are sold and drank in violation of law." To the like effect are definitions in Webster's and Worcester's dictionaries.

In Werner v. Washington (U. S.), 29 Fed. Cas. 705, tippling-houses are defined as "common drinking-houses, kept for lucre or gain, where all persons may, if they will, resort and drink ad libitum."

In Woods v. Commonwealth, 40 Ky. 74, it was held that a tippling-house is "either a house in which tippling and drinking is allowed, or a house kept for the purpose of making a profit by selling spiritous liquors, . . . with or without license."

In Husey v. State, 69 Ga. 54, it was held that "the term 'tippling-house,' within the meaning of a statute prohibiting the keeping open of a tippling-house on the Sabbath day, includes a place where liquor is retailed

and tippled on the Sabbath day, with a door to get into it so kept that anybody can push it open and go in and drink. It makes no difference in law whether the place be called a barroom, or a glee club resort, or a parlor, or a restaurant, if it be a place where liquor is retailed and tippled on the Sabbath day." Followed in Williams v. State, 100 Ga. 511, in which a woman was convicted for selling liquor in her dwelling-house on Sunday.

In Mohrman v. State, 105 Ga. 709, s. c., 43 L. R. A. 398, it is said: "A tippling-house is a place where intoxicating drinks are sold in drams of small quantities to be drunk on the premises, . . . without a license therefor," and it was held that a social club maintaining clubrooms, which were open only to members, wherein a bar was kept and drinks dispensed to members on Sunday, was guilty of keeping open a tippling-house.

In State v. Heckler, 81 Mo. 417, it was ruled that under an indictment for a violation of the dramshop act prohibiting the sale of spiritous liquors on Sunday by a dramshop-keeper, if the evidence failed to show that he had a license as a dramshop-keeper, he might nevertheless be convicted under section 2243, supra (then section 1581, Revised Statutes 1879). A like ruling was made in State v. Kurtz, 64 Mo. App. 123.

In State v. Lucas, 94 Mo. App. 117, 67 S. W. 971, we sustained a conviction on an information bottomed on section 2243, charging the defendant with selling spiritous liquors on Sunday, in which the evidence showed the sale had been made in a drugstore.

It seems that prior to an act approved February 13, 1839, authorizing the issuance of dramshop license eo nomine, the dispensation of spiritous liquors by the dram was confined to licensed taverns and groceries and that tippling was principally confined to these resorts. After the Act of 1839 the dramshop superseded the licensed tavern and grocery as a resort for tippling and dram-drinking. The dramshop-keeper has at all times been prohibited from keeping his dramshop open on Sunday

and has never been allowed to sell or give away spiritous liquors on that day, nevertheless, section 2243, supra, has a place in the criminal jurisdiction of the State and is applicable to a dramshop-keeper, without a license, who keeps his dramshop open on Sunday. The appellant was not proceeded against as a dramshopkeeper, nor did he defend on the ground that he was a licensed dramshop-keeper, and we conclude, on the authority of the cases cited above, that he was amenable to the statute on which he was convicted.

2. Appellant further contends that the court also erred in refusing to grant his peremptory instruction to acquit, for the reason the evidence is insufficient to warrant the conviction. This contention calls for a brief summary of the State's evidence. E. A. O'Dwyer, whom we infer was marshal of the city of Monett, testified that he went to the residence of John T. Burgess and informed him that he had one McCauly under arrest and in jail, and stated that he thought Billy Meagher (appellant) would go on McCauly's bond; that Burgess said he thought Meagher was in the saloon; that this was on Sunday and he and Burgess then went to the saloon for the purpose of seeing if Meagher would go on McCauly's bond; that they went to the back door of the saloon and found it closed but he did not think it was locked; that the door was opened by some one, either by Burgess or by some one on the inside, and they went in, where they found Meagher standing at the end of the counter near the ice chest, and witness thought he had on an apron but was not sure; that there were four or five other persons in the saloon, one of whom was George Galloway. In other particulars, O'Dwyer's evidence as to what transpired is like that of Burgess, who testified: "We knocked on the door or got in some way. The door was fastened when we went in there." That they asked Meagher if he would sign the bond, O'Dwyer having told him of the arrest of McCauly and that he was in jail; that they stood there a few minutes talking; that Meagh-

er declined to make the bond and "asked us if we would have something to drink and Mr. O'Dwyer said he would take a soda and I took a whiskey. There was nothing bought or sold, and I didn't call for drinks to set up, but as I remember it, Mr. Meagher invited us to take a drink." Witness further testified that he and O'Dwyer did not go in the saloon for any purpose except to get Meagher to go on McCauly's bond; that he could not say whether the door was locked or not but thought it was closed. Witness also testified that he was prosecuting attorney at the time and did not institute the prosecution on the facts of the case. (The information was filed by his successor in office.) This was all the evidence offered by the State. The appellant offered none.

In State v. Crabtree, 27 Mo. 232, Crabtree was indicted for keeping open his grocery on Sunday for the purpose of permitting persons to enter and drink. The indictment was bottomed on the same statute as is the information in this case. The proof was that the witness and others opened the door of defendant's grocery, went in and immediately shut the door after them; that two of them took a dram; that defendant set out the liquor; that he did not sell the liquor; that the door of the grocery had been shut previous to the entrance of witness and his friends and that it was not permitted to stand open. Judge NAPTON writing the opinion of the court, at page 234, said: "A grocery-keeper, under the present law, has no authority to retail spiritous liquors at any time. The simple fact that he permits one or more acquaintances to enter his grocery and drink spiritous liquors on Sunday is not of itself a breach of this law. It may be of another. It may be evidence and very sufficient evidence to authorize a conviction under this law, depending upon circumstances and motives to be determined on by the jury. If the jury are satisfied that such acts are done for the accommodation of customers and are, in truth, a continuation of the

usual occupation of the week, they may very well find the defendant guilty."

Neither Burgess nor O'Dwyer went into the saloon for the purpose of getting a drink. Burgess testified that he thought the back door through which they entered the saloon was fastened. O'Dwyer could not say whether it was fastened or not. There is no evidence that the front door was open. The back door was closed and, according to the preponderance of the evidence, was also fastened. This evidence does not prove nor tend to prove that the saloon was kept open or that the appellant was inside ready to open the back door for the admission of customers to be accommodated with drinks. There is no evidence whatever that the four or five persons O'Dwyer saw in the saloon were drinking or had been served with drinks; for aught that appears they were in the saloon for a legitimate purpose. If they were there to be served with drinks the State's attorney should have called them as witnesses to prove the fact. We think the evidence insufficient to warrant a conviction and reverse the judgment. *Nortoni, J.,* concurs; *Goode, J.,* dissents.

GOODE, J. (dissenting)—I dissent from the majority opinion in this case because I think the following evidence given by witness Ed A. O'Dwyer, was sufficient to justify the jury in inferring and finding that the saloon was open for the sale of liquor:

"Q. I will get you to state whether or not this door—or whether or not there was any one right immediately inside of the door that let you in or whether or not the door was locked? A. I don't think the door was locked.

"Q. Where did you find Billy Meagher, the defendant, when you got on the inside? A. Well, as I remember, Mr. Meagher was at the end of the bar close to the ice chest, toward the south end of the bar.

114 app—18

"Q. What did he have on, if anything, in the way of an apron? A. Well, I rather think he had on an apron, but wouldn't swear it; I am not sure.

"Q. You rather think he did? A. Yes, sir.

"Q. Was there any one in there when you and Mr. Burgess went in? A. There must have been four or five persons in there.

"Q. Do you remember now who they were? A. I remember now only George Callaway.

"Q. I will get you to state what was done there, if anything, by Mr. Meagher in the way of setting up the drinks? A. Mr. Burgess and I talked to Mr. Meagher about going on Mr. McCauly's bond, and he gave us to understand he woudn't go on his bond, and if my memory is right, Mr. Burgess turned to me and asked me what I would have and I took a soda.

"Q. What did John take? A. I think John took some whiskey.

"Q. Who was it that set it out? A. Billy Meagher.

"Q. The defendant? A. Yes, sir."

Similar facts were held to be for the jury on the issue of keeping a saloon open on Sunday in State v. Meagher, 49 Mo. App. loc. cit. 577, 578.