CHARLES WERNER
*vs.*
CORPORATION OF WASHINGTON.

AT LAW. DECIDED DECEMBER 23, 1854.

*Appeal from the decision of a Justice of the Peace.*

1. The law of the Corporation of Washington, passed on the 8th of October, 1854, is null and void so far as it prohibits the sale of liquors to be drunk on the premises in ordinaries, taverns or inns.

2. A keeper of a licensed ordinary, tavern or inn, has the right to sell liquors at his bar for the use and the entertainment of his guests; and that his right to sell liquors extends to his guests as well at their meals as at the bar.

3. That there is no substantial difference in selling liquors to his guests at the bar, and selling to them at their meals.

4. Tippling houses are common drinking houses, kept for lucre and gain, where all people may, if they will, resort and drink *ad libitim.*

Mr. J. M. CARLISLE for the appellant.

Mr. JOSEPH H. BRADLEY for the corporation.

The appellant had taken out a tavern license and under it claimed a conferred right to sell spirituous liquors in quantities less than a pint, notwithstanding the law of the Corporation to the contrary.

Judge Morsell, on behalf of himself and colleague, Judge Dunlop, delivered a concurrent opinion in this case, as follows:

This is the case of an appeal from a judgment of a Justice of the Peace, rendered on the 7th of November, 1854, in favor of the Mayor, Board of Aldermen and Board of Common Council, of the City of Washington, against Charles Werner, for twenty dollars fine, and fifty-eight cents costs, for the violation of a by-law of the Corporation.

The warrant charges that said Charles Werner, keeper of a tavern in the Fourth District, at the city of Washington, did sell and barter brandy, rum, gin, whiskey and other spirituous liquors, mixed and unmixed wine, cordial, strong beer and cider, in quantities less than a pint, on the 7th day

of November, 1854, in the Fourth District, at said city of Washington, contrary to the acts of the Mayor, &c., on that subject made and provided.

The by-law under which this proceeding was had is entitled, ''An Act to prohibit tippling houses, and to suppress the sale by the small, of spirituous and intoxicating liquors,'' and it enacts that, ''from and after the first Monday in November then next, tippling-houses, or shops, be and the same are hereby prohibited in the city of Washington, and that it shall not be lawful after the said first Monday in November for any person or persons in any part of the city of Washington, to sell and barter any brandy, rum, gin, whiskey, or other spirituous liquors, mixed or unmixed wine, cordial, strong beer or cider in quantities less than a pint, and every person or persons, who shall sell or barter as aforesaid, shall, on conviction thereof, forfeit and pay a fine for each and every offence of twenty dollars, to be collected and applied as other fines due said Corporation, and on failure to pay said fine, or of securing the payment of the same, the person or persons so offending shall be committed to the work-house for a term not less, nor more than 60 days.''

By the 2d Section, so much of the Act approved respectively June 3d, 1853, entitled, ''An Act to license and tax and regulate taverns and ordinaries,'' and of the Act regulating the sale of spirituous intoxicating liquors, as authorized the Mayor to grant licenses for the sale or barter of the aforesaid liquors in quantities less than a pint; and all acts and parts of acts inconsistent with the provisions of this Act were repealed.

This Act was passed the 8th of October, 1854. On the 1st of November the appellant obtained from the Corporation a license to keep a tavern in the usual form, he having complied with all the requests of the Corporation laws, under which he claimed the right, and did sell at the bar of his tavern in the usual way to his guests; &c., the liquors as charged in said warrant. No objection has been made to the form of the warrant.

The Corporation claims the power to pass the by-law under the provisions contained in the charter of 1820, Sec. 7,

which is in these words, "To provide for licensing, taxing and regulating auctions, retailers, ordinaries, and *taverns*, hackney carriages, wagons, carts and drays, pawnbrokers, venders of lottery tickets, money-changers and brokers and peddlers," and under the amended charter of 1848, Section 2, Paragraph II, which is in these words, "with power to punish those who may sell intoxicating liquors without obtaining licenses therefor, by fines not less than five dollars, and in default of the payment thereof, by imprisonment and labor in the work-house for a term not exceeding 90 days."

The question involved in this case have been presented to the Court in able arguments on both sides, the most important of which is, whether the Corporation had power to pass the by-law mentioned in this case, so as to give it the supposed operation to prohibit the appellant, a regularly licensed tavern-keeper in the usual course of his business as such, from selling at the bar of his said tavern, to his guests the ardent liquors mentioned in said warrant, in quantities less than a pint?

Many grounds have been urged in the arguments *pro* and *con* and they have had respectful consideration, some of the most material of which I shall endeavor to state.

The Attorney of the Corporation correctly assumes that Congress had the power to prohibit such sales; and also that the States had a right to regulate their internal commerce and police institutions, not conflicting with the constitutional provisions on the subject, and for that purpose he referred to several decisions of the Supreme Court. Has that power been granted to the Corporation? He supposes that to regulate a tavern and ordinary, and the power to restrain a tippling house, being in the same grant for the same purpose, must be construed together; that the power to regulate implies and carries with it the power to prohibit, to the extent necessary to regulate; similar to the power possessed by Congress; that selling intoxicating liquors at the bar of a licensed tavern to the guests in such tavern, is a tippling in the offensive sense and expressly within the terms of the charter giving the power to prohibit. It is, however, conceded by him, that in

such a tavern or ordinary the furnishing of liquors to the guests at their meals is not prohibited.

On the part of the appellant it is contended that the power to regulate licensed taverns extends only to the *manner* of carrying it on, not to prohibit it or change its nature; that the by-law is in restraint of a lawful trade, not within the power contained in the charter, in its terms so general and extensive as it involves absurd consequences, and that it being conceded that such tavern-keeper has the right to sell to his guests spirituous liquors by the small, to be used at their meals, the law is shown to be void in part, and being void in part, is void *in toto*.

If the Corporation had the power to pass the by-law in question, that power must be derived to it under the charter of 1820. The charter of 1848 has nothing else for its object than to add additional means to give complete effect to the pecuniary mode of punishing the offence of selling spirituous liquors without license, which it before had not exercised; no new offense is created or increase of power otherwise given.

It may be conceded that the paragraph, "to restrain tippling houses," may be taken in connection with that to provide for the licensing, taxing, and regulating ordinaries and taverns, without, however, admitting the conclusion that a licensed ordinary or tavern, in the sense it is used in the charter of 1820, selling at its bar ordinary liquors in quantities less than a pint, is a tippling house such as is described in the 10th paragraph.

A corporation is the creature of the charter, and can possess no other or greater powers than such as are either expressly given or necessarily implied. The language used to express the terms is certainly different. The one is to *regulate*, the other to restrain or prohibit; and it may be reasonably supposed that Congress intended the distinction which they impart. If prohibition or absolute control in both instances was intended, then it would have been so expressed.

The unreasonableness of the position will appear by carrying out the idea in reference to some of the subjects standing in the same category and the same paragraph, as to

license, &c., wagons, carts and drays. Can it be supposed that power was intended to be given entirely to suppress and break up that branch of trade? Again the same terms occur in the three preceding paragraphs, "to regulate public wharves, the manner of erecting and the rates of wharfage;" "to regulate the stationing, anchorage, and mooring of vessels;" and so of subsequent paragraphs, as "to regulate and establish markets," the "weight and quantity of bread, &c.," in neither of which instances can any one suppose it was the intention to give a power to prohibit. The truth is that the terms were intended to be limited by the nature of the subject to which they were applied, which, though it was to be regulated, was not to be destroyed or deprived of its essential elements. It was a licensed tavern or ordinary which was to be regulated. The important inquiry then is, whether the right to sell spirituous liquors at the bar of a licensed ordinary or tavern for the use and the entertainment of the guests is not an essential ingredient in that employment or business?

The business indicated by the name public inns, taverns and ordinaries will, therefor, be shown to be substantially the same. The responsibilities and obligations to the public and their guests to afford them entertainment and comfort, and for the security of their goods and effects are the same; and what has constituted the essential nature and character of the one has of the other. The establishment has been found indispensably needful for the public convenience from the earliest periods of time, and that the right to sell spirituous liquors, as above stated, is an essential part of the nature of their business.

It has been admitted that it may be lawfully supplied to their guests at their meals. If so, I cannot perceive a sufficient reason for the difference between the selling it at the bar for that purpose and any other part of the tavern. The nature and meaning in a philological sense accords with what has been said. Webster says of inns: "A house for the lodging and entertainment of travelers, often a *tavern* where liquors are furnished for travelers and others. Tavern, a house to sell liquors in small quantities, to be drank on the spot. In some of the United States, a tavern is synonymous

with inn or hotel, and denotes a house for the entertainment of travelers as well as for the sale of liquors, licensed for that purpose. Ordinary, a place of eating where the prices are settled."

To place this subject in a more conclusive point of view, it may be proper to notice as briefly as I can, a course of legal exposition respecting it. 3 Bacon's Abridgment; title, Inns and Innkeepers; the law is stated as to the extent of his duty.

It is said that the duty of an innkeeper extends chiefly to the entertaining and harboring of travelers, finding them victuals and lodging and securing the goods and effects of their guests; and therefore if one who keeps a common inn refuse either to receive a traveler as a guest in his house or to find him with victuals or lodging upon his tendering him a reasonable price for the same, he is not only liable to render damages for the injury in an action on the case at a suit of the party grieved, but also may be indicted and fined at the suit of the King.

They are to sell at certain reasonable fixed rates. " So if an innkeeper sells corrupt wine or victuals, an action lies against him;" also if his servant sells such corrupt wine or victuals, the action on the case lies against the master, &c. Also it is agreed that the Statute of 5 and 6 Ed. VI Ch., 25 and other statutes concerning the licensing of ale houses, &c., do not extend to inns, unless an inn degenerates into an ale house by suffering disorderly tippling, in which case it shall be deemed as such. These past ages show at an early period the public nature and responsibilities of an innkeeper, and that spirituous liquors, as well as others, form a part of the entertainment of, and were furnished by the innkeeper to his guests.

In Maryland, it became the subject of very early legislation, under the name of ordinaries. The first act which I shall notice was passed March, 1780, Ch. 24, entitled "an act licensing and regulating ordinary keepers."

By this act the justices of the peace of each county, in court sitting, were empowered and authorized at this their June and August courts on the Eastern and Western Shores

respectively, to grant licenses to such person or persons as they should think fit, being persons of good repute, to be ordinary keepers for keeping of ordinaries in such, and so many places within their several and respective counties, except in the City of Annapolis, for the ease and convenience of the inhabitants, travelers and strangers, as to them respectively shall seem meet; for every of which licenses, except in the City of Annapolis, there shall be paid the sum of six pounds for every year such person or persons shall keep ordinary as aforesaid."

By Section 4, " the justices were, in the months of June and August, to set and assess in current money, the rates and prices of all liquors, and other accommodations whatsoever by ordinary keepers to be vended for the year ending, &c." Section 5. " Such ordinary keepers were bound to provide and maintain six good feather beds, more than sufficient for the private use of such ordinary, and covering and Indian corn and straw and stabling for ten horses at least (at the court-house) at other places than the court-house three spare beds and stabling for six horses." Penalties are imposed for selling without license.

The 6th Section provides "that such ordinary keeper shall enter into recognizance, with sureties, conditioned that if the person so obtaining such license shall keep good rules and orders, and not suffer loose, idle or disorderly persons to tipple, game or commit any disorders or other irregularities in such ordinary, &c., then such recognizations to be void, &c."

Section 10 requires " that every licensed ordinary keeper should sell only by sealed measures, except bottled cider, perry, quince drink, and strong beer, of the product of the State, and such liquors as should come into the State bottled, and that any ordinary keeper who should neglect to keep a sealed quart, pint, half-pint, and gill measure, and shall refuse or neglect to sell by the same, shall forfeit and pay, &c."

The next Maryland statute which I shall take notice of, is the Act of 1784, Ch. 37, Section 24. This statute is on the subject of the sale of spirituous liquors. It prohibits the sale of any of the spirituous liquors or other liquors therein

mentioned, except in the City of Annapolis and its precincts, without a license for that purpose obtained. "Every person so licensed and selling under the quantity of ten gallons, is deemed a retailer, and no person shall retail less than a pint, the maker, distiller, a brewer of any such liquors excepted; such excepted persons not selling less than a quart at a time. The Court is authorized to suppress disorderly retailers, &c." Merchants were authorized to sell in quantities over ten gallons.

I have made full extracts from these statutes that a full view of the law might be seen on the subject of ordinaries, taverns and retailers of spirituous liquors at the time of the assumption by Congress of jurisdiction over the District of Columbia, at which time they were adopted, so far as applicable, as the law of this District, and being statutes in *pari materia* they should be taken together with the charter in the construction on the subject now under consideration. These provisions shed a flood of light on the true nature of the business employment of the tavern, ordinary or inn. They show that they are substantially the same, and that the right to sell spirituous liquors under a pint is fully and clearly recognized as essentially making a part thereof; and the extent to which the terms licensing and regulating ordinary keepers are understood to affect the trade in the practical application of them, that is in the manner and not the change or prohibition; and that at that early period the right was considered to extend to the sale of them to the guests as well at the bar as at their meals, and that there was no substantial difference. They also show their obligations and responsibilities; also, what will be deemed disorderly and forbidden conduct, and how punishable.

There is a remarkable coincidence between the terms used in the title of the first act and those used in the charter. The statutes were practiced under by the Circuit Court (except such parts as had become obsolete) during the time the power was with that Court—that is, until granted to the Corporation. Such then was the state of the law when Congress, by the terms used in the charter, transferred the power to the Corporation, and the cotemperaneous acts and practice of the

Corporation under it.   To which effect, also, is their joint resolution passed the 14th of May, 1853, providing for sub-mitting to the voters of the city the question of license or no license of shops, taverns and ordinaries, in the second of which it is said, "Resolved, That in case a majority of the votes cast at the next election · shall be for license, then it shall be the duty of the committee who have charge of the interest of the City before Congress to urge upon that body an amendment to the city charter, which will give their Councils the power to pass such laws as will prohibit the sale of all intoxicating liquors within the city limits."

From the foregoing views, and for the reasons stated, I feel that I am brought necessarily to the conclusion that the Corporation had not the power to pass the by-law in question so far as it relates to limiting and  prohibiting licensing ordinary and tavern-keepers from selling, &c., the spirituous liquors mentioned in the warrant to quantities less than a pint; and that the said law as to that is inoperative and void, and that the judgment rendered against the  appellant is erroneous and ought to be reversed.

And here I might close the opinion, but for one ground taken in the defence, that if the by-law in question was void in part, it was so *in toto*.   To avoid misapprehension as to the extent of the opinion in relation to that matter, it will be proper for me to say that such is not my opinion.   The sub-jects, objects, and penalties are various, and the law cannot be considered, as contended for, to be entire.   The law appears to have been made to prohibit tippling houses and to suppress the sale by small of spirituous and intoxicating liquors. There can be no doubt of their power to restrain and prohibit tippling houses, because it is expressly given by the charter as to what may be deemed a tippling house, in addition to what has already been said with respect to taverns and ordinaries.   I shall adopt the description given in the learned opinion of the former Attorney for the Corpor-ation to them August 3, 1853.   It says that tippling houses are common drinking houses, kept for lucre and gain, where all people may, if they will, resort and

drink *ad libitum*. To make a tippling house it is not necessary that in fact one or more shall have actually drank there frequently to excess. It is sufficient that the place be on which, for lucre or gain, is kept for *common* drinking or tippling, whether in fact it attracts customers or not, or whether such customers drink to excess or not, &c. And, although as I before said, a tavern or ordinary may degenerate into a tippling house, the nature and character of the one, as already shown and expressly stated in the statute differ very essentially from that of the other. The statute before recited authorize but two classes who can be licensed to sell spirituous liquors under ten gallons—ordinary keepers, who are not limited as to quantity, and retailers in quantities under ten gallons *and not under a pint*.

The by-law repeals the Act of the 30th of June, 1853, authorizing shop licenses, and I have no doubt of its validity for that purpose. The law so repealed was inconsistent with the general law on the subject, and could, therefore, give no valid shop-keeper's license, as so called.