Michael Potson et al., Administrators de bonis non of the Estate of James Colosimo, Appellees, v. City of Chicago et al., Appellants.

### Gen. No. 26,964.

1. WORDS AND PHRASES—*"ordinary" as distinguished from "restaurant."* The term "ordinary" is not synonymous with nor does it embrace the term "restaurant," and clause 41 of art. V of the Cities and Villages Act (Cahill's Ill. St. ch. 24, ¶ 65), authorizing the licensing of ordinaries, does not authorize the licensing of restaurants.

2. MUNICIPAL CORPORATIONS—*when not authorized to regulate restaurants.* Neither clause 50 of art. V of the Cities and Villages Act (Cahill's Ill. St. ch. 24, ¶ 65), which merely confers the power to regulate the sale of provisions and to provide for a place and manner of selling same; clause 53 conferring the power to provide for their inspection; nor clause 91 conferring the power to license ice cream parlors and coffee houses, confers upon cities the power to regulate restaurants.

3. EQUITY—*when bill to restrain interference with business sufficient.* Allegations of a bill to restrain a city from enforcing an ordinance requiring plaintiffs to obtain a license to conduct a restaurant and to refrain from interrupting, obstructing or hindering them in the conduct of such restaurant, *held* sufficient to give a court of equity jurisdiction.

Interlocutory appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court. Affirmed. Opinion filed October 4, 1921. Rehearing denied October 17, 1921.

SAMUEL A. ETTELSON, for appellants; BERTHOLD A. CRONSON and CARL F. LUND, of counsel.

LEWIS F. JACOBSON, for appellees.

MR. JUSTICE BARNES delivered the opinion of the court.

This is an appeal from overruling the motion of appellants to dissolve a temporary injunction, based on appellees' verified bill, directing the City of Chicago, its mayor, chief of police and their agents to refrain from attempting to enforce against appellees any ordinance of said city requiring them to obtain a license to conduct a restaurant on certain premises, and to refrain from interrupting, obstructing or hindering them in the conduct of a restaurant thereon.

The questions presented are (1) whether the city has the power to pass an ordinance to license and regulate restaurants, and (2) whether the bill presents ground for equitable relief.

1. Does the Cities and Villages Act delegate such power? It is contended by appellees that under clauses 41, 50, 53 and 91 of art. V of the Cities and Villages Act (par. 62, ch. 24, Hurd's Rev. St., Cahill's Ill. St. ch. 24, ¶ 65) the city is given express power to license restaurants, and, if not expressly given thereby, the city has been given implied power under clauses 66 and 78.

We cannot agree with these contentions. Clause 41 confers the power to license and regulate, among other things, "keepers of ordinaries," and it is contended that the words "restaurant" and "ordinary" are substantially synonymous, or that the latter is sufficiently comprehensive to include the former.

Lexicographers do not refer to or define the terms as synonymous. Secondary meanings of the word "ordinary" are defined as follows: "A meal served

to all comers at a fixed price, in distinction from one where each dish is separately charged;'' and ''a tavern or eating house where regular meals are served''; (Webster's Dictionary) ''A usual or customary meal; hence, a regular meal provided at an eating house for everyone, as distinguished from dishes specially ordered''; and ''a place where such meals are served; an eating house where there is a fixed price for a meal.'' (Century Dictionary, Rev. Ed.) The Imperial Dictionary defines the word ''ordinary'' as ''a meal prepared for all comers as distinguished from one specially ordered. * * * A place where such meals are served. An eating house where there is a fixed price for a meal.'' Webster defines a restaurant as ''an establishment where refreshments or meals may be procured by the public; a public eating house,'' and the Century as ''an establishment for the sale of refreshments, both food and drink, a place where meals are served, an eating house.''

From these definitions it is apparent that an ordinary is distinguished from a restaurant in at least one respect, namely, that the meals served in an ordinary are regular ones at a fixed price, which from common knowledge we must recognize is not a feature of restaurants generally, and it is alleged in the bill of complaint that the charge for meals furnished patrons of the restaurant in question ''was not limited to any specific sum,'' but practically to what might be specifically ordered. Whatever may have been the policy of the legislature in recognizing the distinction, with which we are not concerned, it is manifest, we think, that the terms ''ordinary'' and ''restaurant'' are not synonymous, and that the former does not embrace the latter. If there exists a doubt on this question, then it must be resolved against the municipality. (*City of Chicago v. M. & M. Hotel Co.*, 248 Ill. 264; *People v. Village of Oak Park*, 268 Ill. 256.)

The other clauses upon which appellants predicate the claim of an express power are 50, which merely confers the power to regulate the sale of provisions and to provide for a place and manner of selling the same, etc., 53, which confers the power to provide for their inspection, and 91, which confers the power to tax, license and regulate among other things "ice cream parlors" and "coffee houses." It is clear that there is no express power in any of these clauses to license or regulate restaurants as such. It would be just as reasonable to hold that the power was given under these clauses to license and regulate hotels. Yet it was held in *City of Chicago v. M. & M. Hotel Co.*, 248 Ill. 264, that the power to license hotels had not been delegated to cities and villages under said act, and would not be implied from its general police power conferred in clause 66 "to regulate the police  *  *  * and pass and enforce all necessary police ordinances," the court saying that "where all, or nearly all, of the ordinary police powers are made the subject of express grants, only such additional ones can be exercised under a general grant of police power as are absolutely essential to the welfare of the community." What was there said with respect to express and implied powers has equal application to the case at bar. It is not only manifest that none of the clauses referred to delegates an express power to license and regulate restaurants, but, repeating what was said in *City of Chicago v. M. & M. Hotel Co., supra,* that "the specific mention in the various clauses of paragraph 62 of certain enumerated subjects with reference to which the city may exercise police power, is, under a well known canon of construction, the exclusion of all other subjects," we think there is no room for the application of the doctrine of implied powers to the case at bar. If the power to regulate hotels, many of which furnish meals as ordered or have other restaurant

features, cannot be implied from clause 66, conferring the general police power, together with clause 78, which confers the power "to do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease," it is difficult to see how the implication of such a power arises with respect to a restaurant.

It was also held in the cases cited that "statutes granting powers to municipal corporations are strictly construed, and any fair and reasonable doubt as to the question of the power is resolved against the municipality claiming the right to exercise it." At most, appellants' arguments are merely calculated to raise a doubt, and under such rule we must resolve it against their contention.

2. It simply remains for us to inquire whether or not there is any basis in the bill for equitable relief. The right thereto is predicated upon the claim of irreparable injury. The bill avers that complainants had a large and prosperous business of the value of $100,000, which had been conducted under a license which the city had revoked; that under the direction of the mayor of said city and through its chief of police, police officers appeared at complainants' place of business and in the presence of its patrons removed the said license hanging on the wall and gave notice that the mayor had revoked the license and would not allow complainants to reopen the restaurant; that these orders were carried out; that uniformed police officers were stationed several days in the restaurant so that it could not be reopened; that the mayor had announced that he would not allow the same to be reopened by complainants or anyone acting in their behalf or representing their interests, and in consequence thereof the restaurant has since remained closed; that the premises had been specially fitted up at a great expense for restaurant purposes solely and

Potson v. City of Chicago, 222 Ill. App. 50.

that they cannot be used for any other purpose than a restaurant without the expenditure of a large sum of money in removing the present fixtures and re-equipping and decorating the premises for such other purpose; that the entire investment in the restaurant of the value of over $100,000 will be lost unless complainants can resume their business; that the place had been thoroughly advertised at an expense of about $18,000 annually and had resulted in establishing a large and valuable good will, the benefit of which would be entirely lost if the restaurant remains closed; that the city contemplated the use of force to prevent the reopening of said premises should complainants undertake to resume such business in such place, and to that end will use the police of the City of Chicago, who are financially unable to respond to the damages that complainants would sustain; that the threats to keep said restaurant closed had the tendency to prevent the patrons coming to complainants' restaurant, and that in these and various other ways complainants would suffer irreparable injury. These averments, we think, were sufficient to give a court of equity jurisdiction. Hence the action of the court in overruling the motion to dissolve the injunction will be affirmed.

*Affirmed.*

GRIDLEY, P. J., and MORRILL, J., concur.