## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### TALBOTT V. SOUTHERN SEMINARY, INC.

#### November 17, 1921.

1. INNS AND INNKEEPERS—*Boarding House—House of Private Entertainment.*—As used in Acts 1879 and 1906 (Acts 1878-79, p. 76, and Acts 1906, p. 250) providing for the lien of innkeepers and boarding house keepers, the terms "boarding house" and "house of private entertainment" mean the same thing.

2. WORDS AND PHRASES—*Boarding House.*—A boarding house is not in common parlance, or any legal meaning either, a private house where one or more boarders are kept occasionally only and upon special considerations, but it is a *quasi* public house where boarders are generally and habitually kept, and which is held out and known as a place of entertainment of that kind.

3. INNS AND INNKEEPERS—*Boarding House—Boarding School.*—Section 6444 of the Code of 1919, giving a lien to "every innkeeper, keeper of a boarding house, or house of private entertainment" upon the baggage and other property of his guest or boarder, does not give such lien to a boarding school on the baggage or property of the pupils.

4. STATUTES—*Construction—Ordinary Meaning of Words.*—Ordinary words used in a statute must be given the usual, ordinary, and common meaning unless a different intent is in some way manifested.

Error to a judgment of the Corporation Court of the city of Buena Vista in an action of detinue. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*H. S. Rucker,* for the plaintiff in error.

*John Dabney Smith,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

A. L. Talbott entered his two daughters as students in the Southern Seminary, Incorporated, and a few days thereafter withdrew them. The Seminary seized the trunks of the two girls and refused to deliver them to their father, who was the owner thereof. Thereupon Talbott sued out a warrant in detinue for the trunks and their contents before a justice of the peace, which, upon application of the defendant, was removed to the Corporation Court of the city of Buena Vista for the trial. At the trial before a jury in that court, there was a verdict and judgment for the defendant. The case is brought here upon a writ of error to that judgment awarded to the plaintiff.

The defendant claimed a lien on the trunks and contents by virtue of section 6444 of the Code, and the trial court instructed the jury in accordance with that view. Whether that section is applicable to the facts of this case is the crucial question and the only one we need decide, although others were discussed.

The "Southern Seminary, Incorporated," as its name imports, is an incorporated institution, and, by the terms of its charter, "The purposes for which it is formed are to conduct a private school for girls and young women." As "subsidiary purposes" it is allowed to deal in real or personal property, to make contracts, to issue bonds, to deal in its own stock and that of other companies, to declare dividends, "and to exercise other powers incident to the carrying out of the purposes of this charter of incorporation not inconsistent with the laws of the State of Virginia." These are all of its enumerated powers and we may assume, for the purposes of this case, that these powers embraced the power to conduct a boarding school.

37

Section 6444 of the Code is as follows: "Every inn-keeper, keeper of a boarding house, or house of private entertainment, shall have a lien upon, and may retain posses-sion of, the baggage and other property of his guest or boarder brought upon his premises, and also upon the property of an employer of such guest or boarder, controlled and brought upon said premises by such guest or boarder in the course of his employment, for the proper charges due from such guest for his board and lodging."

[1-3] When this statute was enacted in 1879 (Acts 1878-9, p. 76), a lien was given to "the keeper of an ordinary, house of private entertainment. or boarding house." There was no comma after the words "private entertainment." This statute was carried into the Code of 1887 as section 2489, and there was some change in the phraseology and punctuation. In that section a lien is given to "every inn-keeper, keeper of an ordinary, boarding house, and house of private entertainment." Prior to that time no distinc-tion had been made in the statute between an innkeeper and the keeper of an ordinary. Section 2489 was amended in 1906 (Acts 1906, p. 250). In the amendment a lien is given to "every innkeeper, keeper of an ordinary, boarding house or house of private entertainment." This act restores the punctuation of the act of 1879, apparently making "boarding house" and "house of private entertainment" syn-onymous. For many years prior to the first enactment, the term "ordinary" had a well defined meaning in this State. It was used to designate a public house where food and lodging were furnished to the traveler and his beast, at fixed rates, open to whoever might apply for accommo-dation, and where intoxicating liquor was sold by retail. It was a house of public entertainment and a common de-signation of it was a "tavern." As it was liable to abuse its privileges, its conduct was controlled by law, and the county

courts met annually to fix "tavern rates."    For example, prices were fixed for lodging under different conditions. A striking illustration of this is the price of "lodging with clean sheets."    The prices of the different kinds of drinks were also fixed, as for instance, "the price of whiskey or brandy with loaf sugar," and other things that we now look back upon with curiosity.    In contrast with this house of public entertainment, usually designated a tavern or hotel, there was also what was known as a boarding house which was a place of private entertainment, where special contracts were usually made for a definite time, and the two terms "boarding house" and "private entertainment" were often used interchangeably to mean the same thing.    Hence, we find both in the Acts of 1879 and of 1906 the term "boarding house or house of private entertainment" without any punctuation showing that they meant the same kind of house.    Under the term "boarding house," Black, in his Law Dictionary, says:    "A boarding house is not in common parlance, or any legal meaning either, a private house where one or more boarders are kept occasionally only and upon special considerations, but it is a *quasi* public house where boarders are generally and habitually kept, and which is held out and known as a place of entertainment of that kind.    *Cady* v. *McDowell*, 1 Lans (N. Y.) 486.

"A boarding house is not an inn, the distinction being that a boarder is received into a house by a voluntary contract, whereas an innkeeper, in the absence of any reasonable or lawful excuse, is bound to receive a guest when he presents himself.    2 El. & Bl. 144.

"The distinction between a boarding house and an inn is that in a boarding house the guest is under an expressed contract, at a certain rate for a certain period, while in an inn there is no express agreement; the guest being on his way, is entertained from day to day according to his busi-

ness, upon an implied contract. *Willard* v. *Reinhardt*, 2 E. D. Smith (N. Y.) 148."

The term "boarding house" also embraces the idea that the boarder is free to come and go as he pleases, at all reasonable hours, and the landlord has no control over his movements. If a visitor to Lexington were seeking a "boarding house" for his temporary sojourn, it would never occur to anyone to suggest the Virginia Military Institute as a boarding house. It is a boarding school where the cadet is subject to control and gets his food and lodging, but it is not a "boarding house."

[4] Ordinary words used in a statute must be given the usual, ordinary and common meaning, unless a different intent is in some way manifested. In order to apply section 6444 to the Southern Seminary, we should have to read into it the words "boarding school," or else hold that "boarding house" embraces boarding schools, and this we cannot do. A boarding school is not a "boarding house" within the meaning of the statute, and the trial court erred in so holding.

The verdict of the jury will, therefore, be set aside, and the judgment thereon of the trial court be reversed, and, in accordance with section 6365 of the Code, an order will be entered in this court that the plaintiff recover of the defendant the trunks in the warrant mentioned, and their contents, and his costs in this court and also in the trial court.

*Reversed.*