No. 25,647.

THE CITY OF INDEPENDENCE, *Appellee,* v. CHARLES RICHARDSON, *Appellant.*

SYLLABUS BY THE COURT.

LICENSE TAX—*Rooming House—City of Second Class No Power to Levy and Collect License Tax from Keeper of a Rooming House.* A rooming house is neither a boarding house, a hotel nor a tavern, nor is the manager of a rooming house an innkeeper, within the terms of R. S. 14–415, which authorizes cities of the second class to levy and collect license taxes on boarding houses, hotels, taverns and innkeepers and some fourscore other specifically listed occupations, trades and businesses, but which does not mention rooming houses.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed February 7, 1925. Reversed.

*P. L. Courtright,* of Independence, for the appellant.
*Charles D. Shukers,* city attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.:   The defendant was convicted of violating an ordinance of the city of Independence.   His offense was that of operating a rooming house without a license.   He appeals, raising the question that the city has no statutory authority to impose license taxes on rooming houses.

The license tax imposed on defendant's business was as follows:

"HOTELS, RESTAURANTS AND ROOMING HOUSES.

"SECTION 8a.   Each hotel having 25 or more guest rooms, six months, $10.50.

"SEC. 8b.   Each hotel having less than 23 guest rooms, six months, $10.50.

"SEC. 8c.   Each rooming house having 5 or more guest rooms, six months, $5.50.

"SEC. 8d.   Each rooming house having less than 5 guest rooms, for each guest room, six months, $1.50."

The penalty for violating this ordinance imposed on defendant was $50.

The city cites R. S. 14-401, 14-415 and 14-439 as the basis of its authority to enact the ordinance and to impose a license tax on defendant's rooming house.   Defendant calls attention to R. S. 14-416, and it is agreed by the litigants that defendant held a license to conduct a rooming house issued by the state hotel commission under R. S. 36-102, 36-105.   Examining these statutes, it will be noted that R. S. 14-401 is a general grant of power to cities of the second class, like Independence, to enact ordinances, "not repugnant to the constitution and laws of this state, and such as it shall deem expedient for the good government of the city, the preservation of the peace and good order, the supression of vice and immorality, the benefit of trade and commerce, and the health of the inhabitants thereof, and such other ordinances, rules and regulations as may be necessary to carry such power into effect."

In R. S. 14-416 it is provided that all license taxes shall be regulated by ordinance.   R. S. 14-439 amplifies the grants of power conferred by R. S. 14-401, and provides means for the enforcement of city ordinances.   R. S. 14-415 grants authority to the city to levy and collect license taxes on some fourscore trades, professions and occupations specifically enumerated.   A rooming house is not included in this list unless it can be said to fall into the category of

one or more of those expressly covered by the statute, to wit: "boarding houses, . . . hotels, . . . innkeepers, . . . taverns."

The statute is old. By the General Statutes of 1868, chapter 19, § 4, cities of the second class were authorized to levy and collect license taxes on several specified kinds of business, including taverns and public boarding houses. By an act of 1872, ch. 100, § 47, such cities were given authority to levy and collect license taxes on an enlarged list of trades and occupations, which included taverns and public boarding houses. By an act of 1881, ch. 40, § 3, the list of occupations, etc., subject to city license taxes was further expanded into its present scheduled classification, viz.:

"The city council shall have exclusive authority to levy and collect a license tax on auctioneers, artists, agents (including insurance, real estate, loan and mercantile agents), book or map agents or canvassers, *boarding houses,* billiard tables, bridge companies or bridge corporations, bankers, banking houses or corporations, bowling alleys, corporations, contractors, commission merchants, concerts, cattle dealers, coal yards, corn doctors, circuses, doctors, dentists, druggists, express companies and agencies, exhibitions for pay, fortune tellers, gaugers, gift enterprises, grocers, *hotels,* hotel runners or solicitors, horse dealers, hackney or livery carriages, horoscopic views, *innkeepers,* inspectors, insurance companies (including accident, life, fire or marine insurance companies), ice dealers, intelligence offices, livery-stable keepers, lung testers, lawyers, merchants, museums, menageries, muscle testers or developers, magnifying glasses, newspapers and publishing houses, omnibuses, public buildings, halls and grounds, peddlers, pawnbrokers, photographists, porters, public lecturers for pay, patent-right dealers, public masquerades, public balls and street exhibitions, pistol or shooting galleries, private hospitals, retailers, railroads and railroad companies (including street or horse railroads), shows, stockyards, theaters and theatrical exhibitions, *taverns,* ten-pin alleys (without regard to the number of pins used), telegraph and telephone companies, wood yards, wagon yards, and all wagons and other vehicles transporting merchandise or passengers for pay." (R. S. 14-415.)

It will thus be seen that the statute authorizing cities of the second class to levy and collect license taxes has undergone no change in forty-four years. And since rooming houses are not expressly included in the list of businesses which may be subjected to license taxes, the court is bound to hold that the ordinance is void as to the exaction of license taxes on rooming houses, unless they may fairly be characterized as boarding houses, hotels or taverns, or unless their conductors can be fairly designated as innkeepers.

The establishment maintained by defendant, according to the agreed statement of facts—

"Consists of a two-story building containing seven or more rooms, equipped and maintained as bedrooms; that at all times hereinbefore mentioned the said defendant let said rooms to roomers, either by day, week or month; that he did not furnish them with or sell them food or refreshments."

It seems clear that defendant's rooming house was not a "boarding house" within the terms of the statute. A boarding house furnishes its patrons with both food and lodging. Neither is it a hotel, for the latter is a business institution which is held out to the public as a house where all travelers and strangers or other transient persons having means of payment and of proper demeanor and fair repute who choose to patronize it must be received and accommodated, to its capacity, without any previous agreement for accommodation or agreement as to the duration of their stay.

The term "innkeeper" is falling into disuse, and his business is largely obsolescent. An "inn" differed from a hotel in that the inn not only offered accommodations to persons, but stabling and feed for their horses and safe-keeping for their baggage and impedimenta. (*Pinkerton v. Woodward,* 33 Cal. 557.)

The term "tavern" is also growing obsolete. It was a public place where food and intoxicating liquors were furnished to guests, and usually where liquors were sold to be drunk on the premises.

Changing customs have developed two kinds of hotels—those which serve meals to their patrons as part of their regular business, and those which do not serve meals or leave it to the option of their guests whether meals are to be served or not. But so long as such establishments are held out to the public as hotels of the one kind or the other, they must receive, to the limits of their capacity, all respectable persons who choose to come and who are able and willing to pay for such accommodations as the hotel professes to furnish.

But a rooming house is merely a house or building where there are one or more bedrooms which the proprietor can spare for the purpose of giving lodgings to such persons as he chooses to receive. A rooming house is not necessarily a public place to which any well-behaved person of means can go and demand lodgings as a matter of right, as he can do at a hotel. The keeper of a rooming house may receive whom he will, reject whom he will, and usually he makes special contracts with each of his guests concerning compensation and length of stay. The term rooming house is new because the existence of such places is recent; but the only material difference between a boarding house and a rooming house is that a boarding house furnishes meals. In 32 C. J. 529 it is said:

"The distinction between a hotel or inn and a boarding house or lodging house is that the former is for the accommodation of all persons who choose to come and who are in a condition fit to be received, without any prior·or express agreement as to the duration of their stay, while the latter is for the accommodation of such persons as· the proprietor chooses to receive under an express contract for a certain period of time and at a certain rate."

In *The State v. Brown,* 112 Kan. 814, 212 Pac. 663, the keeper of a restaurant and lunch room refused to serve a negro with food and was prosecuted under a statute, R. S. 21-2424, forbidding "managers in charge of any inn, hotel· or boarding house" from making distinction between persons on account of race or color. In affirming the judgment of the district court, which had quashed the information because a restaurant or lunch room was neither an inn, a hotel nor a boarding house, this court said:

"In the state's brief it is contended that a restaurant or lunch room is a hotel or inn and also a boarding house within the meaning of the statute. The words 'hotel' and 'inn' are practically synonymous (4 Words and Phrases, 3625; 2 Words and Phrases, 2d series, 1083, 1084), although a distinction between them is sometimes made, as by calling an inn of the better class a hotel (Webster's International Dictionary). An inn, as the term is ordinarily used, offers to travelers both lodging and food. (See Words and Phrases, title 'Inn.') 'A coffee-house or a mere eating house is not an inn. To constitute an inn there must be some provision for the essential needs of a traveler upon his journey, namely, lodging as well as food.' (Bouvier's Law Dictionary, Rawle's Third Revision, 1582.) 'The keeper of a restaurant who has no beds for the accommodation of travelers is not an innkeeper; . . . a mere restaurant or eating house is not an inn.' (Wandell's Law of Inns, etc., 27.) 'The keeper of a restaurant or café, so far as those terms are used to designate a mere eating house, where no provision is made for lodging the guest, is not an innkeeper.' (16 A. & E. Encycl. of L. 512.)

"A boarding house differs from an inn or hotel both in being less public in character and in arranging with its guests to provide for them during some more or less definite period. (8 C. J. 1132; 16 A. & E. Encycl. of L. 510, 511; 4 Words and Phrases 3624.) The same considerations would obviously distinguish it from a restaurant or lunch room." (p. 815.)

It is argued that rooming houses are more in need of police supervision than most other lines of business. That may be true. Doubtless some are; but the court cannot ignore the fact that throughout the state there are many worthy people who are compelled to augment the family income by letting out a few spare rooms of their homes to roomers, and to that extent they are. conducting rooming houses—of a kind, too, which seldom requires police supervision; · and this consideration suggests the possibility that the omission of

rooming houses from the statute may have been deliberately intended by the legislature.

The court notes the fact that rooming houses are defined by the hotel-inspection act and are subjected to licensing and inspection by the state hotel commissioner, R. S. 36-101 *et seq.*, but that results from the specific terms of the statute. Here we are asked to enlarge the specific terms of another statute—the one which alone gives cities of the second class authority to exact license taxes. If the statute conferring power on the plaintiff city to exact license taxes did not descend to such particularity of detail, if it provided for the exaction of license taxes on every kind of business conducted within the city, or used other general language to the same effect, there would be fair room for holding that rooming houses were within such all-inclusive terms. But when the statute undertakes to enumerate just what kinds of business, trades and occupations may be subjected to license taxes, then the rule *expressio unius est alterius exclusio* applies. And as rooming houses are not expressly mentioned in the statute, they are exempted therefrom. See the analogous case of *Garden City v. Abbott*, 34 Kan. 283, 8 Pac. 473.

The court discerns nothing in the agreed statement of facts which could be fairly construed as an admission that defendant was in fact conducting a hotel.

It follows that the judgment must be reversed and the cause remanded with instructions to discharge the defendant.

It is so ordered.