CEDAR RAPIDS INVESTMENT COMPANY, Appellee, v. COMMODORE HOTEL COMPANY, Appellant, et al., Appellee.

MARCH 13, 1928.

*Lehmann, Seevers & Hurlburt,* for appellant.

*Tom K. Murrow,* for plaintiff, appellee.

MORLING, J.—I. The defendant Commodore Hotel Company will be spoken of as if it were sole defendant. It is undisputed that the plaintiff has a valid chattel mortgage upon the automobile in controversy, and that it was properly filed for record before the automobile was taken to defendant's premises. Defendant's claim is that it is a hotel keeper, and that the automobile is "baggage," within the meaning of Chapter 458, Code of 1927, and that thereunder defendant has a lien superior to the lien of the chattel mortgage,—relying on *Brown Shoe Co. v. Hunt,* 103 Iowa 586. Defendant is proprietor of the Commodore Hotel. The rooms in it are rented for the day, week, month, or year, and also to transients. The testimony is that the building

is operated as a hotel, has a day clerk, night clerk, and bell boys. It has "different sizes and kinds of apartments, furnished and unfurnished, some with kitchenettes, and some without." The apartments have ice boxes, to which defendant delivers ice on tickets sold by it. The building is provided with a café. In connection with the hotel, but in a separate building, defendant operates a garage of 52 stalls. In charge of the garage is a workman, employed at wages and for part of the earnings. He does repair work and car washing. Defendant sells no parts, but furnishes gas, oil, and alcohol. Stalls are also rented to non-tenants of the hotel, but preference in use of the garage is given to guests. Defendant rented to the mortgagor an apartment which he, his wife, and child occupied for a time. Then a change was made to another apartment. In renting, the manager said to the mortgagor:

"It would be $125 a month, and space in the garage would cost him $10 a month. * * * Our first arrangement about his telephone was that he was to pay five cents a call. Later, that was modified by giving him a rate of $2.75 a month. * * * We have a phone in the garage, with the same telephone number, light with the same light meter, water with the same water meter. * * * Mr. Gray [the mortgagor] took his apartment from month to month. Mr. Gray made his home in Apartment 319. * * * Then he had his automobile. Of course, as hotel men we always feel we do have something to turn to assets, and some liability. We figured any man could drive a Hudson automobile could certainly be able to pay his bill. * * * I did not know that the plaintiff had a chattel mortgage on this car until I called up Mr. Seevers. * * * So far as I know, his permanent residence was in the hotel. * * * I made a special agreement with Mr. Gray for $125 for the rental of his apartment and $10 for the rent of the garage. * * * The Grays had no furniture. They rented the apartment furnished."

The defendant's bills were rendered monthly, and were itemized, such as:

| | |
|---|---|
| Apartment rental | $125.00 |
| Garage rental | 10.00 |
| Ice | 3.10 |
| Moving expenses from one apartment to another | 1.50 |

| Telegraph, phone and long distance | 11.66 |
| Gas, oil, and car washes | 9.52 |
| Laundry and valet | 3.60 |

There is one small cafe charge.

Of a number of very interesting questions argued, we deem it sufficient to discuss two only; whether the relationship between defendant and the mortgagor was that of "hotel keeper" and "guest," and whether the automobile is "baggage," within the definition of Section 10348, Code of 1927.

Innkeepers' liens in this state are regulated by the statute above referred to. The common-law innkeepers' lien is thereby superseded.

Section 10348 provides that, for the purposes of such lien:

"1. 'Hotel' shall include inn, rooming house, and eating house. * * *

"3. 'Guest' shall include boarder and patron.

"4. 'Baggage' shall include all property which is in any hotel belonging to or under the control of any guest."

By Section 10349, "a hotel keeper shall have a lien upon the baggage of any guest which may be in his hotel," for accommodations, money advanced, and extras and other things furnished said guest. By Section 10350:

"The hotel keeper may take and retain possession of all baggage and may enforce his claim by an ordinary action. Said baggage shall be subject to attachment and execution for the reasonable charges of the hotel keeper against the guest, and for the costs of enforcing the lien thereon."

By Section 10351:

"If the hotel keeper does not proceed by an ordinary action he shall retain the baggage upon which he has a lien for a period of 90 days, at the expiration of which time, if such lien is not satisfied, he may sell such baggage * * * ."

The statute gives a lien to the proprietor of a "rooming house," as well as to one who would be strictly, at common law, an innkeeper. The defendant operated a hotel, but it also rented apartments. It may be that defendant rented rooms under such circumstances that it could be found to be operating a "rooming house." The same building may undoubtedly be operated as an inn and rooming house, eating house, and apartment house, as a single institution, and under the same manage-

ment. Such operation, however, would not make the relationship between the proprietor and all of the occupants of the house of the one class either guests, roomers, or tenants. The defendant's relationship with some of them might be that of innkeeper and guests, and with others, that of landlord and tenants. At common law, an innkeeper entitled to a lien was one who held out his place as one for the entertainment of all respectable transient persons who chose to come to him. The lien was given largely because of his so holding himself out, and his consequent duty to entertain all transients or travelers who offered themselves as guests. 32 Corpus Juris 530, 550, 569, 570. It was the transient nature of the entertainment contracted for that distinguished the innkeeper from the lodginghouse or boarding-house keeper. See *Humburd v. Crawford,* 128 Iowa 743; *Pollock v. Landis,* 36 Iowa 651; *Brown Shoe Co. v. Hunt,* 103 Iowa 586; *Hubbell v. Higgins,* 148 Iowa 36, 43; 14 Ruling Case Law 492, 542; *Waters & Co. v. Gerard,* 189 N. Y. 302 (82 N. E. 143); *Shaw v. Webb,* 131 Tenn. 173 (174 S. W. 273). The statutory lien is not confined to transients, although the word "hotel," in other connections in the statute, is substantially restricted to the common-law definition of an inn. Code of 1927, Section 2808. See, also, Sections 1685, 6329, 13052, 13251, 13252. Our housing law classifies "multiple dwellings," separating those "in which the rooms are occupied in apartments, suites, or groups," including tenement houses, flats, apartment houses, apartment hotels, bachelor apartments, and kitchenette apartments, from those which include "hotels, lodging houses, boarding houses, furnished-room houses." Section 6329. Under this law, a hotel is a multiple dwelling "in which persons are lodged for hire, and in which there are more than 25 sleeping rooms." While this statute relates to a subject entirely distinct from that governing hotel-keepers' liens, it is manifest that all statutes on the subject of hotels should have consideration in construing any one of them. We may say here parenthetically—though, owing to the importance of the subject and the far reaching consequences of unnecessarily determining it, we do not now pass upon the question —that, if we were determining whether a hotel-keeper's lien is prior to that of a previously recorded, valid, chattel mortgage, we should have to consider as *in pari materia* the provisions of

Chapter 437 and 457, as well as other statutes declaratory of rights in personal property.

The evidence is that the mortgagor rented a furnished apartment. The extent of the apartment, its facilities, furnishings, and manner of care and use, do not appear. It does appear, however, that there was permanency to the arrangement, in that the apartment was rented by the month, and that it was not merely a bedroom or sleeping room for the mortgagor and his wife, but was their home. Ice was furnished. No bill for café service appears. The word "apartment" is used by defendant's manager and bookkeeper in testimony, without qualification. The evidence must be taken at its face value,—that what the mortgagor rented was "a furnished apartment." There is a well understood difference in meaning between an "apartment" and a "room" in a rooming house,—between an apartment house and a rooming house,—a difference that is recognized by the statutes, as has been seen. We shall not undertake the dangerous, if not impossible, task of formulating definitions of "rooming house" and "apartment," or laying down a rule for technically distinguishing between the keeper of a rooming house and the proprietor of an apartment house, or the relationship between them and their respective patrons. Generally speaking, however, the rooming-house proprietor furnishes bedrooms or sleeping accommodations, used principally as a place to rest, sleep, for toilet and dressing. A rooming house is usually a house where bedrooms, as such, are furnished. It is not ordinarily expected that housekeeping, light or heavy, or the preparation or enjoyment of meals, will take place there, or that the room will be used to any considerable extent as a sitting room. An apartment, however, is usually looked upon as a home. It may consist of a single main room; but its term implies that housekeeping, including necessary accumulation and preparation of food, and cooking, will be conducted there. It is frequently provided with separate or common laundry facilities, and usually with separate accommodations for toilet and bathing. The room in a rooming house is usually in the immediate possession (when the occupant is not there) and dependent on the care of the proprietor. The apartment may be furnished with maid service, but it is understood to be in exclusive occupancy and use of the tenant as a sitting room and

a home and for household purposes, as well as for sleeping purposes. An apartment building in a sense consists of a number of dwellings or homes under the same roof. It is an improvement of the old-fashioned "flat."

We are of the opinion that the mortgagor in this case was not a "roomer" or lodger in a "rooming house," and that the relationship between defendant and mortgagor was not that of hotel keeper and guest, under our statute. *Scanlan v. La Coste,* 59 Colo. 449 (149 Pac. 835); *Mathews v. Livingston,* 86 Conn. 263 (85 Atl. 529); *Roberts v. Case Hotel Co.,* 106 Misc. Rep. 481 (175 N. Y. Supp. 123); *City of Independence v. Richardson,* 117 Kan. 656 (232 Pac. 1044); *Dixon v. Robbins,* 246 N. Y. 169 (158 N. E. 63).

II. The automobile was not an article of property such as a roomer or hotel guest ordinarily carries with him, or which is necessarily used in his travels or in the occupation and enjoyment of his room, or necessary or adapted to his comfort, convenience, or enjoyment as a guest, lodger, or roomer. It would be kept in a garage, and garages are not necessarily, even though they now are quite frequently, constructed or operated in connection with hotels. The automobile might, perhaps, as well, and as conveniently, be kept in a separate garage as in one under the same proprietorship as that of the hotel. The hotel garage, so-called, may be under entirely separate management. The automobile today in this respect does not bear much of an analogy to the horse of former days, which was commonly essential to the traveler's peregrinations. By Chapter 457, the keeper "of places for the storage of motor vehicles" has a lien on all property coming into his hands, as such, for charges and expenses of keeping; but such lien shall be subject to all prior liens of record. The defendant here made a separate charge for the use of the stall in the garage. By statute, defendant had a lien on the automobile therefor, but its lien is subject to plaintiff's prior lien of record. There would be much inconsistency in giving the hotel proprietor an innkeeper's lien superior to a prior lien of record, and a garage-keeper's lien subject to such lien.

The statute says that " 'baggage' shall include all property which is in any hotel belonging to or under the control of any guest." The lien is upon baggage of any guest which may be

in his hotel. We are of the opinion that it is the property of the guest, or under his control in the hotel, and not such property as the guest does not take there, that may be subjected to a hotel-keeper's lien.—*Affirmed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.