No. 19,977.

The City of Central v. William L. Axton d/b/a
The Glory Hole Tavern.
(373 P. [2d] 300)

Decided July 9, 1962.

Mr. Albert B. Dawkins, City Attorney, for plaintiff in error.

Messrs. Fugate, Mitchem, McGinley & Hoffman, Mr. Richard L. Whitworth, for defendant in error.

*En Banc.*

Opinion by Mr. Justice Sutton.

This writ of error involves the question of whether the City of Central was authorized under its charter to enact an ordinance imposing an occupational tax on the

business of William L. Axton. The parties are here in the same order as in the trial court where the City was plaintiff and Axton defendant. We will so refer to the parties.

The City was incorporated by virtue of a charter granted by the Territorial Legislature in 1864. Under C.R.S. '53, 139-1-1, a city or town incorporated previous to July 3, 1877, can choose to retain its charter organization and operate in accordance therewith; or under C.R.S. '53, 139-8-1, can choose to reorganize under the general statutes pertaining to cities and towns. The City has chosen to retain its charter and such charter is the sole source of authority under which it operates.

Article V of the City's charter provides in pertinent part that the city council shall have authority:

"Sec. 17. To license, tax and regulate auctioneers, merchants, peddlers, retailers, grocers, taverns, ordinaries, hawkers, brokers, pawnbrokers, and money changers."

Pursuant to the above charter provision the city council on March 1, 1957, enacted Ordinance No. 133 entitled "An Ordinance Establishing An Occupation Tax In and For The City of Central." The ordinance provides in pertinent part as follows:

"Section 1. License Required. It shall be unlawful for any person, firm or corporation to carry on or engage in any business, profession or occupation within the city limits of the City of Central which business, profession or occupation shall involve any of the following activities, without having first paid unto the Clerk of the City of Central the amount specified herein, and having obtained from said Clerk a receipt or license setting forth the occupation, business or profession for which said fee has been paid, the year for which said fee has been paid, and the amount so paid. Such receipt or license shall be kept at the place of business at all times.

"A. The sale of alcoholic beverages for consumption

on the premises, provided for one bar or service bar in one room the fee shall be $100.00, and for each additional bar or service bar or room in which such beverages are served and sold in the same premises an additional $50.00 shall be paid.

* * *

"C. Restaurants not licensed by the State of Colorado to sell alcoholic beverages, $100.00 for the first room and $50.00 for each additional room.

"D. All other restaurants, $50.00.

"Section 2. More than one business. Any store, shop, office or place of business in which more than one of the above businesses, occupations or professions is carried on shall have paid and have receipts or licenses for each such business.

"Section 3. When Payable. The above license fee or tax shall be payable January 1 each year * * * .

"Section 4. Violation—Penalties. The violation of the above provisions shall subject the offender to a civil action for recovery of up to three times the amount of the fee, and the City of Central shall be entitled to recover its costs and reasonable attorney's fees as a part of the judgment.

"Section 5. Should any portion or portions of this ordinance be found unconstitutional, the remaining portions shall remain in full force and effect.

"Section 6. All ordinances and parts of ordinances in conflict herewith are hereby repealed.

"Section 7. The City Council finds that this act is necessary for immediate protection and preservation of the public health and safety, convenience and general welfare, and it shall be in full force and effect immediately after its passage and final publication."

The defendant Axton operates a business in the City known as the Glory Hole Tavern. The premises on which this business is operated consists of a room containing a bar and tables, and an adjoining room containing a service bar and additional tables. In both

rooms alcoholic beverages and food are sold by Axton to patrons. On April 15, 1960, Axton received notice from the City of an occupational tax levy of $200.00 for the year 1960. Upon Axton's subsequent refusal to pay the tax the City brought this action. Its complaint alleged, inter alia, that although failure to pay the occupational tax entitled the City to recover three times the amount of the tax plus reasonable attorney's fees and costs, the City was only claiming the sum of $300.00. After various proceedings not pertinent to this writ of error the county court on June 20, 1961, entered findings of fact and conclusions of law in which the court found that Axton "conducts a *restaurant* and incidentally sells liquor by the drink or conducts a *tavern,* which incidentally sells food" and that "the Charter does not give express authority to tax either." The complaint was accordingly dismissed and a motion for a new trial denied.

The sole issue for determination here is whether the City is authorized by its charter to impose an occupational tax on Axton's business. In their briefs both parties raise additional issues pertaining to the constitutionality of the ordinance under which the tax in question was imposed. The arguments addressed to these constitutional issues proceed from the assumption that the charter did confer authority upon the City to tax the type of business conducted by Axton. Although these issues were also raised at the trial, the court refrained from passing on them, preferring rather to dispose of the case on the ground that there was no authorization by the charter to impose the occupational tax. In the absence of a determination by the trial court of such constitutional questions, we refrain from comment thereon. See *Scott v. Bohe,* 81 Colo. 454, 458, 256 Pac. 315, 317 (1927); *Flank Oil Co., d/b/a Oriental Refining Co. v. Tennessee Gas Transmission Company, d/b/a Bay Petroleum Company, et al.,* 141 Colo. 554, 571, 349 P. (2d) 1005, 1015 (1960). Also we refrain from determin-

ing whether the application of the tax would be confiscatory or discriminatory since these matters are questions of fact to be determined by the trier thereof.

We thus turn to the question of whether the occupational tax was authorized by the charter. The trial court based its finding on the ground that Axton "conducts a *restaurant* and incidentally sells liquor by the drink, or conducts a *tavern* which incidentally sells food." If the city charter authorizes the taxation of either or both of such businesses, then the ordinance in question, regardless of other constitutional questions pertaining thereto, was not invalid and the judgment should be reversed.

Accepting the trial court's characterization of Axton's business as a restaurant which incidentally sells liquor, it is at least arguable that the taxation of a restaurant was authorized under Article V, Section 17 of the charter empowering the city council to tax "ordinaries." An ordinary has been defined as an eating house where regular meals are served. *Webster's Third New International Dictionary* (1961). It has also been defined as a place of eating where the prices are settled. *Werner v. Washington,* 29 Fed. Cas. 705, 707 (Cir. Ct. D.C. 1854). And, an ordinary is not the same as a restaurant for the former is distinguished from the latter in at least one respect, namely, that the meals served in an ordinary are regular ones at a fixed price, which from common knowledge we must recognize is not a feature of restaurants generally. Compare: *Potson v. City of Chicago,* 222 Ill. App. 50, 52, aff'd 304 Ill. 222, 136 N.E. 594 (1922). At least one case indicates that the furnishing of lodging, as well as food, to the traveler and his beast, was characteristic of an ordinary. *Talbott v. Southern Seminary, Inc.,* 131 Va. 576, 578, 109 S.E. 440, 441 (1921).

Interesting as a further examination of the etymology of "ordinary" might prove, it is unnecessary to a disposition of this case. For Article V, Section 17 of

the charter of the City expressly authorizes the city council to tax "taverns" and the trial court alternatively characterized Axton's business as "a tavern, which incidentally sells food." The fact that Article V, Section 17 of the charter generally provides for the taxation of "taverns" and does not specifically mention "taverns which incidentally sell food" cannot serve as a basis for a determination that a "tavern which incidentally sells food" is beyond the purview of the charter authorization.

 We are aware that a municipal charter is to be strictly construed, and that no powers are to be exercised by the municipality except those expressly conferred or necessarily implied. *Bernheimer v. City of Leadville,* 14 Colo. 518, 520, 24 Pac. 332 (1890). This is not to say, however, that the charter must spell out each and every incident of a business which is otherwise expressly subject to taxation under the charter, in order that a tax might be imposed upon the business offering other incidental services. Moreover, the serving of food appears not only to be a common characteristic of a "tavern" under present usage of that term, see *Webster's Third New International Dictionary,* supra; *Murray, et al., v. Hagens,* 143 So. 505, 506 (La. App. 1932); *City of Independence v. Richardson,* 117 Kan. 656, 659, 232 Pac. 1044, 1046 (1925), but is also required by Art. XXII, Sec. 1, of the Colorado Constitution which since 1932 has authorized the sale of intoxicating liquors but expressly prohibits saloons. Undoubtedly at the time of the adoption of the City's charter in 1864 taverns were even then serving food as well as drink.

For the above reasons the judgment is reversed and the cause remanded to the trial court with directions to reinstate the complaint and proceed to trial upon the issues formed by the pleadings.

MR. JUSTICE HALL, MR. JUSTICE FRANTZ and MR. JUSTICE McWILLIAMS not participating.