HULL HOSPITAL, Appellant, v. JOHN WHEELER, Executor, Appellee.

No. 42182.

OCTOBER 24, 1933.

Van Oosterhout & Kolyn, for appellant.

Smith & Smith, for appellee.

KINDIG, J.—On June 17, 1931, Ida Zimmerman entered the Hull Hospital, at Hull, Iowa, as a patient. She was suffering from a tumor of the brain, and she remained at the hospital until her death, on October 21, 1931. While Ida Zimmerman was a patient in the hospital, that institution furnished her board and room, in addition to care, medicine, hospital supplies, treatment, and nursing. Because of the tumor on her brain, the patient could not control her bodily functions and consequently was a great care. The hospital bill amounted to $706.80, of which $300 has been paid. Therefore, there is now a balance due of $406.80.

During the time Mrs. Zimmerman was a patient in the hospital, her hands swelled and three rings were removed from her fingers. These rings consisted of a diamond ring, an Eastern Star ring, and a gold band ring. After their removal, the rings remained in the custody of the hospital.

In due time, John Wheeler was appointed executor of the estate of Ida Zimmerman, deceased. Thereafter, on February 8, 1932, the Hull Hospital, plaintiff-appellant, commenced this action to recover from the defendant-appellee, John Wheeler, as such executor, $406.80, with interest at the rate of 6 per cent per annum from October 21, 1931. As a part of the relief asked, the appellant sought to obtain an innkeeper's lien on the rings aforesaid, and accordingly prayed that the rings be sold to satisfy the claim. Although the district court allowed the appellant judgment for $406.80, with interest at 6 per cent per annum from October 21, 1931, against the Zimmerman estate, it denied the appellant a lien on the rings aforesaid. Hence the appellant appeals from that part of the judgment denying the lien.

It is claimed by the hospital that it has a lien on the rings because of sections 10348 and 10349 of the 1931 Code. Those sections provide:

"10348. For the purposes of this chapter:

1. 'Hotel' shall include inn, rooming house, and eating house, or any structure where rooms or board are furnished, whether to permanent or transient occupants.

2. 'Hotel keeper' shall mean a person who owns or operates a hotel.

3. 'Guest' shall include boarder and patron, or any legal occupant of any hotel as herein defined.

4. 'Baggage' shall include all property which is in any hotel belonging to or under the control of any guest.

"10349. A hotel keeper shall have a lien upon the baggage of any guest, which may be in his hotel, for:

1. The accommodations and keep of said guest.

2. The money paid for or advanced to said guest.

3. The extras and other things furnished said guest."

Because of the broad language contained in the sections just quoted, the appellant argues that a hospital is included within the definition of a hotel. To illustrate, in subdivision 1, of section 10348, where the word "hotel" is defined, there is the phrase "or any structure where rooms or board are furnished, whether to permanent or transient occupants". Again, in subdivision 3, of section 10348, where the word "guest" is defined, there is the following phrase: "Or any legal occupant of any hotel as herein defined."

In view of the broad language of these sections, it is insisted by the appellant that a hotel, as there defined, includes a hospital. A history of the development of hotels and hospitals reveals such a wide difference in the fundamental purposes of the two institutions that the legislature cannot be held to have declared a hospital to be a hotel unless the intent so to do clearly appears. It is said in the Encyclopedia Americana, vol. 14, p. 436, that a hotel is "an inn or public tavern". Webster's New International Dictionary defines a hotel to be: "A house for entertaining strangers or travelers; an inn."

"At common law, an innkeeper entitled to a lien was one who held out his place as one for the entertainment of all respectable transient persons who chose to come to him. The lien was given largely because of his so holding himself out, and his consequent duty to entertain all transients or travelers who offered themselves as guests." Cedar Rapids Investment Co. v. Commodore Hotel Co., 205 Iowa 736, local citation 739, 218 N. W. 510, 511, 56 A. L. R. 1098.

See, also, Humburd v. Crawford, 128 Iowa 743, 105 N. W. 330; 14 Ruling Case Law, p. 492.

The legislature of Iowa has broadened the common-law definition of an innkeeper, as indicated by the statutes previously quoted. Brown Shoe Co. v. Hunt, 103 Iowa 586, 72 N. W. 765, 39

L. R. A. 291, 64 Am. St. Rep. 198. Now the statutes add to the foregoing definitions by declaring a hotel to include a "rooming house, and eating house, or any structure where rooms or board are furnished, whether to permanent or transient occupants". Although the definition of the word "hotel" is thus extended, nevertheless there is a plain limitation upon the kind of business that shall constitute a hotel. A hotel keeper entertains his guests. He furnishes them food, drink, shelter, and lodging. Likewise, an eating house furnishes its patrons food and drink. So, too, a rooming house provides the roomer with lodging and shelter. While the eating house and the rooming house were not included in the original meaning of the word "hotel", yet there is a relationship between the rooming house, the eating house, and the hotel.

On the other hand, a hospital, where the sick and injured are cared for, nurses its patients and gives them medical attention. These are the primary purposes of such hospital. Confusion may arise because the word "hospital" is used in different ways. 30 Corpus Juris 462. In this opinion, however, when the word "hospital" is used, reference will be made to the institution that nurses its patients and gives them medical attention. The appellant, according to its articles of incorporation, is organized under the laws of Iowa as that kind of an institution. Obviously the room and board provided by the hospital are merely incidental to the nursing and medical treatment, if not part of it. For instance, a guest goes to a hotel for lodging, shelter, food, and drink. Such is the purpose of the hotel. When a man is sick, however, he goes to the hospital, not merely for food, drink, lodging, and shelter, but rather for nursing and medical care. Thereby, he becomes a patient in the hospital, as distinguished from a guest in a hotel.

At an ancient time, the word "hospital" signified an institution known as an inn (see 30 Corpus Juris, p. 462, section 1, note 2 under "B"), but the word "hospital" soon ceased to mean an inn, and at a very early date became known as a place where patients were nursed and medically treated. According to the Encyclopedia Americana, vol. 14, pp. 427 and 428:

"Hospitals, in the sense of institutions for the care of the ailing poor, first occur in history as Christian foundations. Public hospitals are mentioned by no classical writer before the time of Christ and no trace of one is to be found in the explorations. * * *

With the advent of Christianity, there came a new development and Christ's example in healing the sick made this one of the features of the early history of the Church. * * * Care for the ailing became a Christian tradition. * * * In the hospital work of Christians there was no distinction of creed, and its open-hearted charity deeply influenced the people of the time (of early Christianity). After this, hospital development continues uninterrupted."

When referring to the institution that cares for the sick, the word "hospital" has a well-defined modern meaning.

"Ordinarily, a hospital is an institution for the reception and care of sick, wounded, infirm, or aged persons." 30 Corpus Juris, p. 462.

So, it appears that from a very early time there was, and at the present time there is, a marked distinction between the hotel, or inn, and the hospital, when confined to an institution that cares for the sick and injured. The one serves one purpose and the other another. As before said, a guest journeys to the hotel for entertainment, while the patient goes, or is carried, to the hospital for treatment and nursing. Thus it appears that for centuries past the distinction before indicated always has been, and at the present time continues to be, present.

With this historical background, it is quite apparent that the legislature of Iowa in sections 10348 and 10349, above quoted, did not intend to include a hospital in its definition of hotel. In subdivision 1 of section 10348, above quoted, the legislature, when using the phrase "any structure where rooms or board are furnished, whether to permanent or transient occupants", intended to restrict its meaning to businesses like hotels, rooming houses, and eating houses. Also, when the legislature in subdivision 3 of that section used the phrase, "or any legal occupant of any hotel as herein defined", it attempted to classify the persons there mentioned as guests, boarders, or patrons of hotels, rooming houses, and boarding houses.

"A fundamental rule of construction is that, where particular words are followed by general ones, the general are restricted in meaning to objects of a like kind with those specified." Rohlf v. Kasemeier, 140 Iowa 182, local citation 187, 118 N. W. 276, 278, 23 L. R. A. (N. S.) 1284, 132 Am. St. Rep. 261, 17 Ann. Cas. 750.

See, also, Gohlke v. Hawkeye Commercial Men's Association, 198 Iowa 144, local citation 154, 197 N. W. 1004, 35 A. L. R. 1177.

Plainly, therefore, the appellant is not entitled to a lien on the rings in the case at bar because a hospital is not a hotel. By so concluding we do not decide whether the rings in any event would be baggage under the statutory definition above set forth.

Wherefore, the judgment of the district court should be, and hereby is, affirmed.—Affirmed.

ALBERT, C. J., and EVANS, CLAUSSEN, and DONEGAN, JJ., concur.