[File No. 6846.]

PAULINE PAGEL, Respondent, v. TRINITY HOSPITAL ASSOCIATION, a Corporation, Appellant.

(6 NW(2d) 392.)

Opinion filed November 13, 1942.

*Halvor L. Halvorson,* for appellant.

*Robert W. Palda,* for respondent.

*Smith & Hovet,* on behalf of Murphy, Toner & Kilgore, and *John A. Alphson* and *C. L. Young,* amici curiae.

JANSONIUS, Dist. J. This is an action brought by the plaintiff against the Trinity Hospital Association of Minot, North Dakota, to recover a balance she claims due her under the Minimum Wage Law of the state of North Dakota.

In her complaint she alleges that on March 22, 1937, she was hired by the defendant hospital as a public housekeeper and paid $17.50 per month for the first five weeks and thereafter the sum of $20 per month until the 22d day of June, 1940, and was paid in all $776.87.

That pursuant to law the minimum wage that the defendant should pay the plaintiff was $32.63 per month or a total of $1,272.57. This action is brought to recover the difference of $495.70.

The defendant interposed the following answer:

"First: That it is a non-profit corporation organized, created and existing under the non-profit laws of the state of North Dakota as a charitable institution.

"Second: Denies each and every allegation, matter and thing by the complaint contained, not hereinbefore specifically admitted qualified or otherwise explained.

"Third: Specifically denies that the plaintiff was employed by the defendant as a public housekeeper, and specifically denies that there is an order issued by the North Dakota Workmen's Compensation Bureau covering employment in non-profit charitable hospitals, as operated by non-profit corporations in North Dakota.

"Fourth: Specifically denies that they are indebted to the plaintiff in any sum or sums whatsoever."

Pursuant to the issues thus framed the case came on for trial before

Hon. John C. Lowe, district judge, on June 16, 1941, without a jury. Defendant appeals from an adverse judgment and from an order denying a motion for a new trial.

There seems to be no material conflict in so far as the contract of employment is concerned. Plaintiff testified she was to receive $17.50 for the first five weeks and thereafter $20 per month and room and board.

Mrs. Hannah Meisel who was acting for the hospital in employing plaintiff testified that the salary was $17.50 for the first month and $20 thereafter, and also board, room, and laundry. The evidence also shows that all employees got free hospitalization in case of sickness.

The plaintiff worked at the hospital a little over three years; she took her meals at the hospital but did not room there, nor did she avail herself of the privilege of having her laundry done there.

There is a direct conflict as to why the plaintiff did not room at the building leased by the hospital known as Phillips Terrace where the other employees roomed. The evidence shows that she would have received the amount she now claims if she had roomed there instead of at a private place.

Plaintiff testified she did not room there because there was not a room. She testified that Mrs. Meisel said she did not have a room.

Mrs. Meisel testified that when arrangements for employment were being made the plaintiff told her she had a son who was staying with her and therefore she could not room in the hospital. She testified that during the time plaintiff worked at the hospital there was always room available. Mrs. Meisel in answer to the question "what did you say and what did she say about the room?" said, "I just said I could not give her a room in the apartment wtih a child because we did not do that. I had no authority to do that."

The trial court resolved this question in favor of the plaintiff and since there is a direct conflict in the evidence and the trial judge heard and saw the witnesses we will accept the findings of the district court on this issue.

The Sixteenth Legislative Session in 1919 passed the Minimum Wage and Hour Law and provided for the administration thereof by

the Workmen's Compensation Bureau. In 1935, under chapter 162 of the 1935 Session Laws of North Dakota, the administration of the Minimum Wage and Hour Law was transferred from the Workmen's Compensation Bureau to the Department of Agriculture and Labor.

The law as amended by chapter 162 of the Laws of 1935, empowers the Commissioner of Agriculture and Labor to ascertain and declare hours of employment, standards and conditions of labor, minimum wages and make investigations in regard to certain occupations in which women and minors are employed.

Under the powers granted Order No. 1 was issued and was in force during the period plaintiff was employed by the defendant. The specific provision plaintiff relies on as giving her a right to recover in this action is as follows:

"Experienced workers—No employer shall employ any woman as waitress or counter girl in any public housekeeping establishment in the State of North Dakota at a weekly rate of less than $13.41 for waitresses and counter girls and at a weekly rate of less than $12.78 for chambermaids and kitchen help.

"Board furnished—When board only is furnished by employer to any woman employed as waitress or counter girl in any public housekeeping establishment as part payment of the wage to such woman, not less than $8.16 a week ($35.36 a month) shall be paid to such employee. Where board only is furnished by an employer to any person employed as kitchen help or as chambermaid in any public housekeeping establishment as part payment of the wage to such women, not less than $7.53 a week ($32.63 a month) shall be paid to such employee."

Order No. 1 was signed by the commissioner and countersigned by the secretary. Subsequently a postscript was added as follows: "The Department interprets that 'Public Housekeeping Occupation' includes the work of waitresses in restaurants, hotel dining rooms, boarding houses, and all attendants employed at ice cream and light lunch stands and steam table or counter work in cafeterias and delicatessens where freshly cooked foods are served and the work of chambermaids in hotels and lodging houses and boarding houses and hospitals and

the work of janitresses and car cleaners and of kitchen workers in hotels and restaurants and hospitals and elevator operators."

How, when or where this postscript was added does not appear either from the instrument itself or from any other evidence. There is nothing to show that the Commissioner of Agriculture and Labor amended or modified Order No. 1 or that any conference was called to consider classification of employees of a hospital.

This court in a recent case had before it a similar situation in the case of Wiseth v. Traill County Teleph. Co. ante, 165, 5 NW (2d) 307. In that case an effort was made to amend or modify Order No. 5 of the Workmen's Compensation Bureau by correspondence between the Bureau and the Telephone Company. The court in considering § 396b2 and § 396b7, Supp. to Comp. Laws, said:

"At the time Order No. 5 was promulgated, the workmen's compensation bureau was 'authorized and empowered to ascertain and declare . . . Standards of minimum wages for women in any occupation in the state . . . To prepare, adopt and promulgate rules and regulations for the carrying into effect of the foregoing provisions of this act, including rules and regulations for the selection of members and the mode of procedure of conferences; . . .'" Section 396b2, Supp.

"The bureau was authorized to call a conference 'composed of not more than three representatives of the employers in said occupation and of an equal number of the representatives of the employees in said occupation and of not more than three disinterested persons representing the public and of one or more commissioners.' Section 396b6, Supp. The bureau could submit to such conference some subject for inquiry and upon reference of any recommendations made by the conference the bureau, if it approved any recommendation, was required to give notice of 'a public meeting at which all persons in favor of or opposed to said recommendations will be given a hearing; and, after said publication of said notice and said meeting, said bureau may, in its discretion, make and render such an order as may be proper or necessary to adopt such recommendations and carry the same into effect. . . .' Section 396b7, Supp.

"There is nothing in the record to show that the bureau, as a bureau,

prepared or adopted any modification or amendment of this Order No. 5, that any conference was called to consider the reclassification of workers in telephone exchanges or that the bureau ever decided to amend Order No. 5."

It follows from the reasoning in the case of Wiseth v. Traill County Teleph. Co. that the interpretation of Order No. 1 by the Commissioner of Agriculture and Labor did not add anything to said order. The question therefore is whether or not Order No. 1, as originally adopted, covers employees of hospitals.

The question arises: Is the plaintiff within the class of employees covered by Order No. 1? Order No. 1 refers only to employees of any "Public housekeeping establishment." No other class of employees is included therein. Therefore, the plaintiff to claim the benefit of Order No. 1 must bring herself within the class of employees covered by the order,—an employee in a public housekeeping establishment.

The word "hospital" in general usage in the minds of the public is an institution in which the sick and injured are cared for. It is a place where patients receive medical attention. It is not a place like an inn or hotel where people go for food and entertainment. It is true a hospital must serve food to its patients, as an incident to their care and treatment, but it is not a public housekeeping establishment. Only sick and injured are admitted to a hospital; it is not open to the public generally like a restaurant or hotel. The difference between a public housekeeping establishment, such as a hotel, inn or restaurant and a hospital, is clearly explained by the supreme court of Iowa in the case of Hull Hospital v. Wheeler, 216 Iowa 1394, 250 NW 637. A patient in the Hull Hospital in addition to care, medicine, and hospital supplies received her board and room. The hospital sought to obtain an innkeeper's lien on rings belonging to the patient left in the custody of the hospital. Under the Iowa law, hotelkeepers are given a lien on the baggage of its guests. Because of the broad language of the Iowa law the Hull Hospital contended it had a lien on the rings. The Iowa Law provides: " 'Hotel' shall include inn, rooming house, and eating house, or any structure where rooms or board are furnished, whether to permanent or transient occupants."

The court then uses this language:

"Although the definition of the word 'hotel' is thus extended, nevertheless there is a plain limitation upon the kind of business that shall constitute a hotel. A hotelkeeper entertains his guests. He furnishes them food, drink, shelter, and lodging. Likewise, an eating house furnishes its patrons food and drink. So, too, a rooming house provides the roomer with lodging and shelter. . . .

"On the other hand, a hospital, where the sick and injured are cared for, nurses its patients and gives them medical attention. . . . Obviously the room and board provided by the hospital are merely incidental to the nursing and medical treatment, if not part of it. For instance, a guest goes to a hotel for lodging, shelter, food, and drink. Such is the purpose of the hotel. When a man is sick, however, he goes to the hospital, not merely for food, drink, lodging, and shelter, but rather for nursing and medical care."

The court concluded by saying: "Plainly, therefore, the appellant is not entitled to a lien on the rings in the case at bar because a hospital is not a hotel."

While hotels, restaurants, and inns may come under the classification of "Public housekeeping establishments" since the main purpose of such institutions is to furnish food, shelter and entertainment to guests, a hospital is not a "Public housekeeping establishment" since its main purpose is to care for and give medical attention to sick, wounded and injured patients.

The legislature in the passage of the Minimum Wage and Hour Law did not make it mandatory upon the Commissioner of Agriculture and Labor to take jurisdiction of all employees in the state. Under § 396b6, 1925 Supp. Comp. Laws 1913, the Commissioner of Agriculture and Labor may call a conference for the purpose of having conditions of any particular class of workers investigated by the conference. After consideration such conference may make a report and recommendations to the department. Upon receiving the recommendations of the conference the department may approve any and all of the recommendations and if it deems it advisable, issue an order covering the subject of employees investigated by the conference.

So far the department has not made any order covering employees

of a hospital, and therefore there is no basis for a recovery here. Whether or not the department has a legal right to promulgate orders covering employees of charitable nonprofit corporations therefore is not involved in this case.

The judgment of the district court is reversed and the cause remanded with directions to dismiss the action.

BURR, Ch. J., and MORRIS, CHRISTIANSON, and BURKE, JJ., concur.

NUESSLE, J., disqualified, JANSONIUS, Dist J., sitting in his stead.