### ADLER et al. v. NORTHERN HOTEL CO. et al.

United States District Court.
N. D. Illinois, E. D.
Oct. 28, 1948.

Marks & Marks, of Chicago, Ill., for plaintiffs.

Kahn & Kahn, of Chicago, Ill., for defendants.

Schwartz, Allen & Shriman, of Chicago, Ill., for American Veteran's Committee, amicus curiae.

Poppenhusen, Johnston, Thompson & Raymond, of Chicago, Ill., for Chicago Residential Hotel Ass'n, amicus curiae.

CAMPBELL, District Judge.

Plaintiffs brought this action under the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., and Section 1895 of the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1895, seeking recovery of treble damages for alleged overcharges in rents and for bonus payments paid for the purpose of procuring apartments in the establishment owned by defendant Northern Hotel Company. In their answer defendants denied the payment of the bonus payments, and further alleged as an affirmative defense that the premises in question had been decontrolled by virtue of the provisions of the Act and by the regulations issued thereunder by the Office of the Housing Expediter. Issue having been joined a trial of the cause was had upon its merits.

The establishment in question is a 6½-floor brick structure, and is 50 feet wide by 170 feet long. It is called the "Winshire Arms Apartment Hotel", which fact is attested by bronze placques bearing this legend affixed to the exterior of the building. In all, there are 136½ rooms, comprising 68 separate apartments and two single rooms, all of which are furnished with the customary articles of furniture.

The evidence appears to be uncontroverted that a number of services were made available, and rendered, to the occupants of the various apartments. These included the three basic services of hotels, i. e., maid service, furnishing and laundering of linens, and use and upkeep of furniture and fixtures. As was quite common at the time of the enactment of the Housing and Rent Act of 1947, 50 U.S.C.A.Appendix, § 1881 et seq., the quality of these services left much to be desired, but they were nevertheless, offered to the tenants. In the absence of an objection by a particular tenant, beds were made daily; linen was changed and laundered once a week; furniture and fixtures were repaired, if not promptly, at least before a major catastrophe occurred; and each apartment received a general cleaning, of a sort, weekly.

Three principal issues were presented for determination by the pleadings, trial, and post-trial briefs: (a) Were bonus payments actually demanded of and paid by some of the plaintiffs to defendants Goodman and Paddor, in order to procure accommodations in the establishment? (b) Although plaintiff Silverberg's bonus claim is barred by the Statute of Limitations, is he, nonetheless, entitled to restitution of the amount paid? (c) Was the Winshire Arms Apartment Hotel decontrolled by the Housing and Rent Act of 1947 and the regulations issued thereunder?

I am of the opinion that certain of the plaintiffs have sustained their burden of proof in establishing by a preponderance of the evidence that they did pay a bonus for their apartments in the following amounts and to the persons indicated:

| Name | Amount | Paid to |
|------|--------|---------|
| Harry Swichkow | $280.00 | Mr. Paddor |
| Melvin Silverberg | 500.00 | Mr. Paddor |
| Irving Adler | 300.00 | Mrs. Goodman |
| Harold Simon | 300.00 | Mrs. Goodman |
| Jerry De Graff | 300.00 | Mr. Paddor |

However, the remainder of the claims, based on alleged bonus payments, are too specious to permit recovery. Plaintiff Goldstone sought recovery on the theory that, inasmuch as he had sold his automobile to Mrs. Goodman after having paid an over-ceiling price for it, the difference in the two selling prices constituted a bonus payment. This line of reasoning may be admired for its novelty, but is much too tenuous to afford a legal basis for recovery. Consequently, the claim was stricken from the complaint by order of the Court during the course of the trial. Similarly, the claim of plaintiff Haimowitz must be disallowed. The ground upon which recovery is sought in his case is that he had been obliged to purchase new carpeting and pay for decorating as a condition precedent to obtaining an apartment. However, I feel that he failed to sustain the burden of proving that the occupancy was so conditioned upon his acts; his purchases were mainly designed to benefit him personally and not the defendants.

By plaintiff's own admission, Silverberg's bonus claim was barred by the one year statute of limitations contained in Section 205 of the Act. Therefore, he seeks to invoke the general powers of a court of equity to order restitution of amounts illegally received or retained by one party; and cites in support thereof the case of Porter v. Warner Holding Co., 1946, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332. That case, however, is authority only in the situation where the Price Administrator brings an action seeking injunctive relief. In such circumstances, under the provision of section 205(a) of the Emergency Price Control Act authorizing the District Court, upon a proper showing, to grant a "permanent or temporary injunction, restraining order, or other order", an order for the recovery and restitution of illegal rents may be considered a proper "other order". But the same principle cannot be applied to the case at bar. The Act not only creates the right of recovery, but definitely limits its enforcement to one year. Given its proper concept, the right itself is one of restitution, and is one that may be, and is limited. Public policy does not demand that a restitutional right exist, under all circumstances, without termination; and where its exercise has been limited to one year, the dictates of public interest have certainly been served. No recovery can, therefore, be had by Silverberg in this case. Judgment will enter for treble damages for the bonus payments made by Swichkow, Adler, Simon and De Graff, plus $1000.00 attorney's fee and costs.

Proceeding to the issue of whether the Winshire Arms Apartment Hotel was decontrolled by the Housing and Rent Act and the regulations issued thereunder, it can be seen that the question involves a construction of statutory language. The pertinent provision is found in Section 202 (c) (1) of the Act:

"Sec. 202. As used in this title—

"(c) The term 'controlled housing accommodations' means housing accommodations in any defense-rental area, except that it does not include—

"(1) Those housing accommodations, in any establishment which is commonly known as a hotel in the community in which it is located, which are occupied by persons who are provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service".

Section 1(b) (2) (i) (a) of the Controlled Housing Rent Regulations, as amended, reads as follows:

"(2) Decontrolled housing to which this regulation does not apply. This regulation does not apply to the following:

(i) Accommodations in hotels, motor courts, trailers and trailer spaces, and tourist homes. (a) Housing accommodations in a hotel (see definition of hotel in section 1) which on June 30, 1947, were occupied by persons to whom were provided customary hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy services (not necessarily all the types of services named need be provided in all cases as long as enough are provided to constitute customary hotel services usually supplied in establishments commonly known as hotels in the community where they are located)."

The term "hotel" is defined in Section 1 of the Rent Regulations in the following manner:

" 'Hotel' means any establishment which is commonly known as a hotel in the community in which it is located and which provides customary hotel services."

By general custom in the Chicago area, only those establishments will be included within the scope of the term "hotel" which appeal primarily to transient trade. Examples of this type are the Palmer House, Stevens Hotel, Drake Hotel, etc. The word "primarily" is employed purposely for, admittedly, the mere fact that a building is operated, advertised and known as a hotel is not conclusive of the character of any particular occupancy therein, and a person who occupies rooms in a hotel may, under the circumstances

of the case, be a tenant and not a guest. Where the same building is operated as an inn or hotel, rooming house and apartment house, as a single institution and under the same management, some of the occupants may be guests, others roomers, and still others tenants.

In the case at bar, the defendant failed completely to show that the Winshire was regarded in the community as an establishment catering primarily to the transient public. The only evidence adduced along this line was that certain tradesmen sent out invoices addressed to the "Winshire Arms Hotel". There was no testimony to the effect that the principal characteristic of its occupancy was that of transiency, or that it was held out to the community as such.

On July 1, 1948 the Office of the Housing Expediter published its interpretation of the scope and meaning of the provisions set forth above:

"Based upon the intent of Congress as expressed in the legislative history of the Housing and Rent Act of 1948, the word 'hotel' as used in the act and the regulations is interpreted to mean those establishments which on June 30, 1947, the effective date of the Housing and Rent Act of 1947, were commonly known as hotels in the community in which they were located, and which provided occupants of housing accommodations therein with customary hotel services. The word 'hotel' is interpreted to include all types of hotels, such as transient hotels, residential hotels, apartment hotels, or family hotels.

"From the legislative history it is clear that Congress did not intend to exempt from control housing accommodations in establishments which on June 30, 1947, were not commonly known as hotels in the community in which they were located, but were known as apartment houses, apartments, rooming houses, and boarding houses."

■ Although the interpretations of law rendered by an administrative agency of the government are not binding, as such, upon this Court, due consideration and great weight must be given to them. Therefore, if, in the opinion of the Housing Expediter, apartment hotels, residential hotels and family hotels are all to be included in the definition of the term "hotel", his pronouncement to this effect should not be abrogated unless clearly erroneous or contrary to public interest. However, if the Winshire Arms Apartment Hotel fails to qualify as one of the types of establishments embraced in the scope of the term, it becomes unnecessary for the Court to determine whether the Expediter's interpretation should be invalidated as being too extensive.

I think it is axiomatic that, regardless of what appellation is given to a building by its owners, it is unable to qualify as one of the above types unless it possesses all of its essential attributes. In other words, the name of an establishment is not, of itself, determinative of its inherent nature. Certainly, the nature of a private home is not altered by the simple expedient of calling it a hotel; it must also be operated as one.

■ What, therefore, is an essential attribute of a hotel, whether it be transient, residential, family or apartment? Clearly, it should have available continuously some accommodations for guests. To be a guest of an inn or hotel it is necessary that the person should be a transient; that is, that he should come to the inn for a more or less definite stay, for if he comes on a permanent basis, he will be deemed a boarder, lodger or tenant. Corpus Juris Secundum defines the word "guest" in the following manner:

"A 'guest,' within the meaning of the rules of law pertaining to the relation of innkeeper and guest, is a transient person who resorts to, and is received at, an inn for the purpose of obtaining the accommodations which it purports to afford." 43 C.J.S., Innkeepers, § 3, page 1136.

The evidence is conclusive beyond any reasonable doubt that not a single occupant of the Winshire took up his abode in that establishment on a transient basis. Every occupant arrived and dwelled there as a permanent tenant rather than as a temporary guest and paid rent on a monthly basis. The Winshire was his permanent home and the character of his residency may be analogized to that of domicile.

"Domicile has been defined, in terms of its elements, as residence at a particular place, accompanied by an intention, either positive or presumptive, to remain there permanently or for an indefinite or unlimited length of time". 28 C.J.S., Domicile, § 1, page 4.

Furthermore, in addition to the fact that none of the occupants was accepted as a temporary guest, the testimony of all the witnesses leads to the inescapable conclusion that no accommodations were held out or made continuously available to transients at the time of the enactment of the Housing and Rent Act of 1947, which is the period with which this Court is concerned. It may have been that, at some time far prior to the effective date of the Act, rooms or apartments had been made available to transients, but, as of July 1, 1947, all such activities had ceased. The Winshire then existed simply as an apartment building wherein certain special services were tendered to its tenants, compensation for which was provided for in the monthly rental.

I conclude, therefore, that the Winshire Arms Apartment Hotel, not having had continuously available accommodations for transients at the time of the enactment of the Housing and Rent Act of 1947, was not decontrolled. This conclusion is both economically sound and in conformity with the intent of Congress to decontrol only those establishments whose costs had been increased so drastically by reason of the transient nature of their business. Operational costs, increase in direct proportion to the percentage of transient business done; but, where the occupancy of a building is characterized by permanency, the cost of maintenance is more or less fixed. In this latter situation, a landlord should not be granted the extraordinary relief afforded in the decontrol provisions of the Act, but is constrained to seek the normal remedy provided for controlled housing accommodations.

In view of the fact that the defendant in good faith made application to the Office of the Housing Expediter for decontrol, and that all excessive rents were placed in escrow pending final administrative and judicial determination, I feel that a lack of willfullness has been sufficiently shown. Judgment, therefore, will enter for the plaintiffs for single damages only as to the excessive rents.

Judgment, approved by the parties as to form, shall be submitted to the Court within fifteen days.