NORTHWESTERN UNIVERSITY, Plaintiff-Appellee, v. THE CITY OF
EVANSTON, Defendant-Appellant.

First District (5th Division)   No. 1—90—1227

Opinion filed November 1, 1991.

Jack M. Siegel, of Chicago, for appellant.

Sidley & Austin, of Chicago, and Michael C. Weston, of Evanston (Lee
J. Schwartz and Lisa A. Hausten, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

The City of Evanston (City), pursuant to its home rule power, in
1973 adopted a "hotel-motel tax" found in section 3—2—4 of the
Evanston Municipal Code. "Hotel" and "motel" were defined to in-

clude "every building or structure kept, used *** advertised and held out to the public to be a place where lodging or food, or lodging and food or apartments or suites, or other accommodations are offered for a consideration to guests in which ten (10) or more rooms, apartments or suites or other accommodations are used for the lodging or lodging and food for such guests." (Evanston, Ill., Municipal Code §3—2—4.) The tax was imposed upon the user of the rooms and collected by the innkeeper who received a fee for this service.

This case arose out of an amendment to the Evanston hotel-motel tax (ordinance 4—0—89) that expanded this tax to include

"a building or structure, such as a convention center, or executive conference facility, not open to the public but otherwise meeting the criteria set forth in the previous sentence." Evanston, Ill., Municipal Code §4—0—89.

The only structure in Evanston currently fitting the above description is the James L. Allen Center of Northwestern University. Northwestern moved for summary judgment on the basis that: (1) the amendment violates Illinois constitutional principles of equal protection and uniformity; (2) the tax is an illegal occupation tax; and (3) the amendment is inapplicable on its face. The trial court granted judgment in Northwestern's favor and enjoined the City from collecting the tax, declaring that the use of sleeping rooms in the Allen Center is "clearly incidental to the University's educational programs and cannot be subjected to the type of use tax intended for hotel/motel room users."

The City appeals, contending that it has home rule powers to impose a hotel tax on a facility not open to the public and operated for educational purposes by a not-for-profit corporation that provides lodging within the criteria established in the ordinance.

Northwestern University is a private, not-for-profit, post-secondary education institution. Its main campus is located in the City of Evanston, Illinois. One of Northwestern's graduate schools is the school of business, known as the J.L. Kellogg Graduate School of Management. The individuals using the sleeping rooms at the Allen Center are primarily students in the executive master's program, with an enrollment of 280 and the executive education program, with an enrollment of about 2,600 students. The business school faculty teaches all the degree programs and the majority of the continuing education programs. Occasionally, outside experts are invited to participate in teaching courses in the continuing education programs. In teaching the various programs, the business school utilizes two build-

ings on the Evanston campus, one of which is the James L. Allen Center, the focus of the controversy in the case at bar.

The Allen Center is located on Northwestern's Evanston campus and is the primary site for the executive continuing education programs. Occasionally, customized executive development seminars, created by the Kellogg faculty on a request basis, are also taught at the Allen Center. In addition, placement interviews for Kellogg graduates are conducted there.

The Allen Center is a four-story building erected in 1979 approximately 160,000 square feet in size. The first and second floors of the building are devoted primarily to classroom space. It also has two dining rooms offering cafeteria service to students, each with a seating capacity of 125 persons.

The third and fourth floors of the Allen Center contain 100 sleeping rooms and eight study rooms. Students enrolled in the continuing education programs are required to reside at the Allen Center for some or all of the duration of their programs to enable them to participate more readily in evening sessions and study groups. A separate fee is not charged for the use of the rooms; each student pays an all-inclusive fee which covers tuition, room, board and course materials. However, Northwestern, as a matter of internal auditing procedure, does assign the amount of $80 *per diem* as the cost of a sleeping room at the Allen Center.

The sleeping rooms are used primarily by the business school. Occasionally, if space is available, other departments of Northwestern use the rooms for activities related to Northwestern business, such as accommodations for visiting faculty or guest lecturers.

From time to time portions of the Allen Center are rented to outside organizations that lease classroom space in the Allen Center for programs taught by the organizations themselves. Northwestern witnesses testified that during the 1988-89 fiscal year an average of 3.2% of the sleeping rooms at the Allen Center were used by outside organizations in conjunction with their use of classroom space, and 1% was used by individuals affiliated with other Northwestern activities. The general public is not permitted to rent the sleeping rooms at Allen Center. The building is closed during holidays when Northwestern is in recess.

On February 27, 1989, the Evanston city council amended the hotel-motel tax by adopting Ordinance 4—0—89, which is set forth above.

Because the Allen Center is not open to the general public and is used for educational purposes, Northwestern filed this lawsuit on July

28, 1989, seeking declaratory and injunctive relief. On April 24, 1990, the trial court granted summary judgment in its favor, declaring the tax to be illegal and permanently enjoining the City of Evanston from collecting the tax. It is from that ruling the City appeals.

OPINION

In the exercise of its taxing power, a home rule city is subject to the equal protection clauses of the Illinois and Federal constitutions. (*Searle Pharmaceuticals, Inc.. v. Department of Revenue* (1987), 117 Ill. 2d 454, 512 N.E.2d 1240; U.S. Const., art. XV, §1; Ill. Const. 1970, art. I, §2.) Under principles of equal protection, a classification is invalid if it is arbitrary and without a reasonable basis. *Searle*, 117 Ill. 2d at 468, 512 N.E.2d at 1246.

Section 2 of article IX of the 1970 Illinois Constitution provides that classes of nonproperty taxes must be reasonable and the subjects and objects within each class must be taxed uniformly:

"In any law classifying the subjects or objects of nonproperty taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly." Ill. Const. 1970, art. IX, §2.

Section 2 provides for greater protection than the minimum given by equal protection as is stated by the Report of the Committee on Revenue and Finance to the Constitutional Convention:

"Uniform treatment of unlike classes is just as unreasonable as non-uniform treatment of like classes. Attempts to enforce uniformity with respect to unlike classes, have created more problems than they solve. Classification is essential. It is also essential that the General Assembly be bound by a standard of reasonableness. The federal due process and equal protection clauses provide a minimum standard. [Citation.] The Committee believes, however, that Illinois taxpayers should receive added protection in the state constitution." 7 Record of Proceedings, Sixth Illinois Constitutional Convention 2074.

■ The Illinois Supreme Court has held that the test for determining whether a tax classification meets the requirements of uniformity is twofold: (1) whether any real and substantial differences exist between those who are taxed and those who are not, and (2) whether the classification is reasonably related to a legislative purpose. *Federated Distributors, Inc. v. Johnson* (1988), 125 Ill. 2d 1, 530 N.E.2d 501.

Uniformity may be violated by including those not in fact within the class as well as excluding those properly within it. *Central Televi-*

*sion Service, Inc. v. Isaacs* (1963), 27 Ill. 2d 420, 428, 189 N.E.2d 333, 337; *Stolze Lumber Co. v. Stratton* (1944), 386 Ill. 334, 54 N.E.2d 554, *overruled on other grounds in Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 108 N.E.2d 8.

A taxing body is further prohibited under the uniformity provisions of the Illinois Constitution from defining statutory terms contrary to their common meaning. *Central Television Service, Inc. v. Isaacs* (1963), 27 Ill. 2d 420, 428, 189 N.E.2d 333, 337.

Applying the above principles to the case at bar, Northwestern asserts that the Evanston ordinance amendment expanding the hotel-motel tax to include convention centers and executive conference facilities not open to the public violates both equal protection and uniformity by declaring the Allen Center to be a hotel when in fact it is an educational facility.

The City of Evanston counters by asserting that it is not attempting to define the Allen Center as a hotel, but is merely adding an additional reasonable classification of facilities subject to the tax. However, it also concludes that the Allen Center sleeping rooms are in essence no different than ordinary hotel or motel rooms.

Evanston contends that under its home rule authority, it has the power to tax the users of sleeping rooms in the Allen Center although that facility is not open to the public and is utilized almost exclusively by persons who are attending educational programs of Northwestern University's graduate school of business. This is, however, not the issue before us because Evanston has seen fit to accomplish this objective by extending the motel-hotel tax to such a facility.

At oral argument, counsel for the City of Evanston expressed the opinion that his task of persuading this court to uphold this tax, as applied to the Allen Center, might have been easier if the City had enacted amendment 4—0—89 as a separate ordinance directed only to facilities meeting the criteria described therein rather than including it within the hotel-motel tax. He then urged that we should uphold the amendment as an extension of the hotel-motel tax because the City of Evanston under its home rule power could have enacted such a tax by using the separate ordinance format described above. This argument was raised and rejected in *Central Television Service, Inc. v. Isaacs* (1963), 27 Ill. 2d 420, 189 N.E.2d 333. In that case the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1957, ch. 120, par. 440) was amended to provide that persons who engaged in the business of repairing tangible personal property for others by adding or incorporating therein other tangible property for use or consumption shall be deemed to be engaged in the business of selling tangible personal

property at retail. The plaintiffs conceded that their occupation could be taxed by the State under a proper legislative enactment uniform in its application. (*Isaacs*, 27 Ill. 2d at 425, 189 N.E.2d at 335-36.) However, they contended that their customers were contracting for the repair and restoration of function rather than the purchase of parts and materials. Further, they argued that the occupation they engaged in was the rendition of service to the customer, not that of selling tangible personal property at retail. (*Isaacs*, 27 Ill. 2d at 424, 189 N.E.2d at 335.) The supreme court agreed because the stipulated facts demonstrated that the transfers of tangible personal property used in making repairs were incidental to the repair services rendered. In concluding that this extension of the Retailers' Occupation Tax Act ran afoul of the uniformity provisions of the Illinois Constitution, the court stated:

> "The difficulty here lies in a misconception of the nature of the Retailers' Occupation Tax Act. It is not a tax on the privilege of buying, or upon the individual sale—it is a tax on the *occupation* of selling at retail [citation]—an occupation in which plaintiffs are not engaged." *Isaacs*, 27 Ill. 2d at 426-27, 189 N.E.2d at 336.

Therefore, the issue presented by this case is whether the Allen Center facility is sufficiently similar to a hotel or motel that the City of Evanston may reasonably extend its hotel-motel tax ordinance to the users of the sleeping rooms contained in that facility.

Until passage of the amendment in controversy here, the only facilities subject to the hotel-motel tax were entities open to the public which provided sleeping accommodations to guests for compensation on a nondiscriminatory basis. These facilities fit the commonly accepted meaning of a hotel. *Ambassador Athletic Club v. Utah State Tax Comm'n* (1972), 27 Utah 2d 377, 496 P.2d 883; *Moyer v. Board of Zoning Appeals* (Me. 1967), 233 A.2d 311, 317; *508 Chestnut, Inc. v. City of St. Louis* (Mo. 1965), 389 S.W.2d 823, 829; Ill. Rev. Stat. 1989, ch. 71, par. 4c (Illinois Innkeepers Act).

The first uniformity standards violation argument Northwestern advances is that the Allen Center does not resemble a hotel or motel because it is not open to the general public.

Although the amendment in question here appears to be uniform in its application, the only facility in Evanston which fits the definition is the Allen Center.

There is no Illinois case directly on point on this issue; however, there are cases from other jurisdictions that have considered the question of whether facilities not open to the general public should be

treated similarly to public facilities for tax purposes. In *Ambassador Athletic Club v. Utah Tax Comm'n* (1972), 27 Utah 2d 377, 496 P.2d 883, the Utah Supreme Court held that an athletic club that rented rooms to its members but not to the general public was not subject to the Utah hotel tax because it was not performing the function of a hotel. *Ambassador Athletic Club*, 27 Utah 2d at 379, 496 P.2d at 884.

Also, in *City of Independence v. Richardson* (1925), 117 Kan. 656, 232 P. 1044, the Kansas Supreme Court held that a hotel license tax could not be applied to the owner of a private rooming house because it was not open to the general public indiscriminately. Because hotels are required to provide accommodation to any member of the public, Northwestern argues that the amendment violates the uniformity provisions of the Illinois Constitution by adding a category of facilities not open to the general public. *Stolze Lumber Co. v. Stratton* (1944), 386 Ill. 334, 54 N.E.2d 554, *overruled on other grounds in Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55, 108 N.E.2d 8, is illustrative of this principle. In that case the legislature by amendment sought to add to the commonly known definitions of "use and consumption" a new and additional definition while at the same time keeping their settled, popular meanings. It thus sought to change the scope of sales at retail to include transfers or sales that are made for resale where the thing sold is employed by classes of persons therein named rendering service. (*Stolze*, 386 Ill. at 339, 54 N.E.2d at 557.) The court invalidated the amendment as violative of the uniformity provisions of the Illinois Constitution.

The second argument that Northwestern advances is that even if the amendment in controversy were facially valid, its application to the Allen Center violates the constitutional requirements of uniformity because the Allen Center, contrary to being a hotel offering public accommodations, was designed and is used primarily as a teaching facility for Northwestern's graduate business school.

The City of Evanston responds by stating that there is no constitutional or statutory provision exempting an educational facility from application of the hotel-motel tax if it furnishes lodging rooms for a consideration. (See *Board of Education of School District No. 150 v. City of Peoria* (1979), 76 Ill. 2d 469, 394 N.E.2d 399.) While this might be persuasive if Northwestern were operating a hotel or motel which furnished lodging rooms to the public, we must determine whether a facility, not open to the public and used primarily for educational purposes which furnishes lodging incidental thereto, is engaged in activities sufficiently similar to a hotel or motel for that tax to be applied to users of its sleeping rooms.

■ It is the nature of the services rendered which is determinative for classification purposes. *Adler v. Northern Hotel Co.* (N.D. Ill. 1948), 80 F. Supp. 776, 780, *rev'd on other grounds* (7th Cir. 1950), 180 F.2d 742. See also *Moyer v. Board of Zoning Appeals* (Me. 1967), 233 A.2d 311, 318.

No one disputes that the Allen Center is an educational facility. It is used by full-time and part-time degree-seeking students as well as students enrolled in continuing education programs offered through the executive education program. The educational programs are the primary reason individuals come to the Allen Center and the provision of rooms is incidental to those programs.

Dining halls and sleeping facilities used by universities were held to be educational facilities, not hotels or restaurants in *City of Chicago v. University of Chicago* (1907), 228 Ill. 605, 81 N.E. 1138. The fact that a separate charge was made for room and board is of no consequence. *People ex rel. Hesterman v. North Central College* (1929), 336 Ill. 263, 266, 168 N.E. 269, 270 (dormitories and dining halls exclusively used by students are an essential part of universities and colleges).

In *People ex rel. Goodman v. University of Illinois Foundation* (1944), 388 Ill. 363, 372, 58 N.E.2d 33, 38, the Illinois Supreme Court held that the student union which contained dining rooms, lounges, guest rooms and a bowling alley was used for educational purposes notwithstanding the fact that charges were made for rooms and meals. Provision of lodgings at an institution primarily operated for another purpose does not make the institution a hotel. *Pagel v. Trinity Hospital Association* (1942), 72 N.D. 262, 267, 6 N.W.2d 392, 395; *Hull Hospital v. Wheeler* (1933), 216 Iowa 1394, 250 N.W. 637 (Hotels, restaurants and inns may be classified as "public" housekeeping establishments because their main purpose is to furnish food, shelter and entertainment to patrons. A hospital is not such an establishment because its main purpose is to care for sick, wounded and injured patients).

For similar reasons the Florida Court of Appeals in *Department of Revenue v. Camp Universe, Inc.* (Fla. App. 1973), 273 So. 2d 148, declined to hold that the incidental provision of food and lodging by a children's camp subjected the camp to the Florida hotel tax. *Camp Universe*, 273 So. 2d at 150.

The City of Evanston contends that since outside organizations occasionally use the Allen Center sleeping rooms, it does accommodate the public and therefore is a proper subject of the hotel-motel tax. The evidence established that in the fiscal year preceding this

lawsuit, such use was made of the sleeping rooms only 3.2% of the time. This minimal use does not change the primary character of the Allen Center as an educational facility of Northwestern University. In *People ex rel. Goodman v. University of Illinois Foundation* (1944), 388 Ill. 363, 58 N.E.2d 33, the student union building was used primarily by students. The evidence revealed, however, that the general public used the facilities in the building about 3% of the time. The court held that the "primary use to which the property is devoted, and not its secondary use, is controlling." (*Goodman*, 388 Ill. at 370, 58 N.E.2d at 37.) *De minimus* use by the general public did not change the fact that the student union building was used for educational purposes.

Prior to the amendment in controversy, the Evanston hotel-motel tax applied only to institutions providing lodging or food and lodging to the general public. After the amendment in question, the tax was extended to a facility of Northwestern University not open to the public devoted primarily to educational purposes furnishing lodging and food to students incidental to its programs. It cannot be persuasively contended that Northwestern, by operating this facility, is in the market and competing for the same clientele as hotels and motels thereby justifying the extension of this tax to users of the sleeping rooms in that facility.

For the reasons set forth above, the amendment to the City of Evanston hotel-motel tax (ordinance 4—0—89), extending the application of the hotel-motel tax to a convention center or conference facility not open to the public devoted primarily to educational programs, violates the uniformity requirements of section 2 of article IX of the 1970 Illinois Constitution. In view of our disposition of this case, we need not consider other challenges advanced by Northwestern to this amendment, including the question of whether it is an invalid occupation tax.

Affirmed.

LORENZ, P.J., and MURRAY, J., concur.